**Sam LIBERATI, Ralph Ennis, Peter Mosness, John A. Lundgren, and Alaska Independent Fishermen's Marketing Association, Appellants,**

v.

**BRISTOL BAY BOROUGH, Appellee.**

**No. 3365.**

Supreme Court of Alaska.

Sept. 29, 1978.

---

(3%) tax on the sale of all raw fish caught within the borough.[2] They contend that the ordinance is invalid because:

1. proper notice of a public hearing prior to the enactment of the ordinance was not given;

2. the tax is a severance tax on a natural resource and the power to levy such a tax is reserved exclusively, to the State by Article VIII of the Alaska Constitution;

3. municipal taxation of raw fish has been preempted by the State; and

4. assuming the tax to be a sales tax, it is on a specific commodity and only a general sales tax may be imposed by municipalities.

The superior court, in a carefully reasoned decision, rejected each of these arguments and entered summary judgment for the borough. We affirm.

**I**

AS 29.48.150(a)[3] prescribes ordinance enactment procedures which must be followed by municipalities. Before an ordinance is enacted there must be a public hearing. At least five days before the public hearing a summary of the ordinance must be published along with a notice of the time and place for the public hearing. If there is a newspaper of general circulation distributed within the municipality, the notice must appear at least once there, and if there is no such newspaper, the notice must be posted in three public places within the municipality.[4]

Allen McGrath, Graham and James, Anchorage, for appellants.

Harland W. Davis, Anchorage, for appellee.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices.

**OPINION**

MATTHEWS, Justice.

Appellants[1] challenge a Bristol Bay Borough ordinance imposing a three percent

1. Appellants are commercial fishermen and a fishermen's organization.

2. Bristol Bay Borough, Alaska, Ordinance No. 32 (April 2, 1973).

3. AS 29.48.150 provides:

*Ordinance procedure.* (a) The following procedure governs the enactment of all ordinances except emergency ordinances. An ordinance may be introduced by a member or committee of the assembly or council or by the municipal executive or chief administrator. An ordinance shall be set for hearing by the affirmative vote of a majority of the votes authorized on the question. A summary of the ordinance and its amendments is published together with a no-

tice of time and place for public hearing. The hearing follows publication by at least five days. Copies of the ordinance must be available to all persons present or the ordinance must be read in full. The assembly or council shall hear all interested persons wishing to be heard. After the hearing, the assembly or council shall consider the ordinance and may adopt it with or without amendment. The assembly or council shall print and make available copies of adopted ordinances.

4. AS 29.78.010(12) defines "published":

(12) "published" means appearing at least once in a newspaper of general circulation distributed within the municipality or, if there is no newspaper of general circulation distributed

In this case the proposed ordinance was set for public hearing on February 19, 1973. A notice of public hearing was published in the *Anchorage Daily News* on February 6, 1973.[5] The notice summarized the proposed ordinance as:

> providing for levy and collection of sales tax of three percent (3%) of the sales price on all fish and fish eggs which are harvested within the boundaries of the Bristol Bay Borough.[6]

On the hearing date, which was also the next regular meeting of the borough assembly, the ordinance was called for discussion. Representatives of a salmon cannery appeared and commented on the ordinance; other citizens discussed it as well. Action on the ordinance was then postponed to an unspecified subsequent meeting. At its March 13, 1973 meeting the assembly discussed the proposed ordinance further and set April 2, 1973, as the date for a new public hearing. There was no newspaper publication of the April 2 hearing, although notice was posted in public places within the borough. At the April 2 meeting the ordinance was passed by the borough assembly. A special election was then set for April 27, 1973, proper newspaper notice of the election was published, and the ordinance was passed by the voters.

■ What must take place at a public hearing is defined by AS 29.48.150(a).[7] Copies of the ordinance must either be read or be available to those present, and the assembly must hear all those wishing to be heard. Appellants do not contend that copies of the ordinance were not available or that all persons wishing to be heard were not heard at the February 19 meeting. There is a presumption that proceedings of the governing body of a municipality have been conducted in accordance with law.[8] That presumption has not been rebutted here. We therefore conclude that a public hearing took place on February 19.

The next question is whether the further public hearing of April 2 was needed. If it was not, then the failure to properly publish notice concerning it is legally irrelevant.

After the February 19 meeting and before April 2 the ordinance was amended. In its original form the ordinance applied to all red salmon, the major species harvested in the borough, and red salmon eggs; as amended it applied to all raw fish. The other amendment pertained to the responsibility as between buyer and seller of fish for the collection and payment of the tax. The initial ordinance placed the obligation to pay and collect the tax on the buyer, while leaving the seller's responsibilities ambiguous and poorly defined.[9] The

---

within the municipality, posting in three public places for at least five days.

5. The parties have stipulated that the *Anchorage Daily News* was a newspaper of general circulation distributed within the Bristol Bay Borough.

6. Plaintiffs' Exhibit G provides as follows:
   NOTICE OF ORDINANCE & PUBLIC HEARING
   Notice is hereby given that the Bristol Bay Borough Assembly, Naknek, Alaska, is enacting Ordinance No. 32 providing for levy and collection of sales tax of three per cent (3%) of the sales price on all fish and fish eggs which are harvested within the boundaries of the Bristol Bay Borough. A public hearing will be held Monday, February 19, 1973 at 7:00 P. M., in the Borough Building Courtroom.
   DATED: February 2, 1973
   /s/ Ray E. Baker
   Borough Manager
   Published: Feb. 6, 1973

Legal Notice No. 8177

7. See footnote 3.

8. Antieau, *Municipal Corporation Law,* § 4.19 at 4–38 (1978).

9. For example, the ordinance stated: "collection is enforceable by the seller as the certified tax collector of the borough"; "the seller or the buyer is at all times accountable to the borough for" sales taxes collected; and "taxes due the borough collected by a seller . . . shall be paid at the expiration of each quarter of each calendar year. Every seller liable for collection or buyer responsible for the retention shall file with the borough . . . a return . . ." Moreover, the buyer of a fish seller's business was required to withhold a portion of the purchase money to cover the amount of sales taxes which might be due the borough from the seller. Bristol Bay Borough, Alaska, Proposed Ordinance No. 32, introduced to the borough assembly on February 19, 1973.

amended ordinance clarified the responsibilities of buyer and seller, placing the obligation to pay the tax on the seller and the obligation to collect and retain the tax on the buyer.

AS 29.48.150(a) contemplates that an ordinance may be amended after public hearing without the necessity of a new hearing. The statute provides: "after the hearing, the assembly or council shall consider the ordinance and may adopt it with or without amendment."[10] Only those changes to an ordinance which are so substantial as to change its basic character require that the public hearing process be repeated.[11] The amendments in question fall far short of that standard. They are squarely within the descriptive summary of the ordinance published on February 6.[12] They do not, as appellants contend, shift the economic burden to fishermen.[13] In both its initial and amended forms, the ordinance requires that three percent (3%) be added to the price of fish, and places primary collection responsibility on the buyer. If anything, the amended form is in practical effect less burdensome to fishermen because it does not impose collection and accounting responsibilities on them, as the initial ordinance somewhat ambiguously did. We, therefore, conclude that no additional hearing after that of February 19 was required, and the ordinance was properly enacted.

## II

In reviewing appellants' claims that the borough's raw fish tax is substantively illegal the following general comments are relevant. During the formative stages of our state constitution considerable attention was focused on designing a system of local government to answer to the perceived unique needs of Alaska. Traditional counties were viewed as financially handicapped, poor cousins of state government, without adequate fiscal autonomy. In a report prepared for the constitutional convention, the problem was summarized this way:

*Tax Base*: Within the framework of home rule provisions for local governments, such units would seem to enjoy considerable taxing freedom. This is not necessarily the case, however, for general state law can and frequently does restrict severely the taxing powers of local units. Where home rule is not in use, local units have only those taxing powers permitted them by state law or by such charters as they may be permitted to draft or may receive from the state legislatures. It is no understatement to say that throughout the United States most counties and municipalities have long been scraping the bottom of the tax resource barrel. In the face of ever-increasing service demands and mounting construction and administrative costs, few cities are amply supplied with revenue. New sources are everywhere being sought.

A major difficulty for local government in their search for adequate revenues is the virtual preemption of the most lucrative tax fields by the states and federal government. About all that many municipalities have left to them is the property tax, which has always been their principal source, and a few business license taxes and fees. Counties are in no better shape. As a consequence, legislatures have been increasingly bombarded with requests to liberalize local government taxing powers.[14]

Acutely aware of this problem, the delegates to the constitutional convention at-

10. See footnote 3.

11. *Jefferson v. City of Anchorage*, 513 P.2d 1099, 1101 (Alaska 1973).

12. See footnote 6.

13. One factor which has been used in determining whether an amendment to a proposed ordinance is such as to require a new public hearing is whether a significant added burden has been placed on those challenging it. *Heaton v. City of Charlotte*, 277 N.C. 506, 178 S.E.2d 352, 359 (1971).

14. Constitutional Studies, Prepared for the Alaska Statehood Committee by Public Administration Service, Washington, D.C., Vol. 3, No. VIII at 41–2 (November 1955).

tempted to create a strong, fiscally sound system of local government. This policy is reflected in the first section of the Local Government Article of the Alaska Constitution:

> The purpose of this article is to provide for maximum local self-government with a minimum of local government units, and to prevent duplication of tax-levying jurisdictions. A liberal construction shall be given to the powers of local government.[15]

██ To implement the goal of non-duplication of taxing jurisdictions, Section 2 limits taxing authority to organized boroughs and cities.[16] No other local entities may tax. Section 3 authorizes the legislature to enumerate borough powers,[17] which it has done with respect to taxation, in AS 29.48.-010(7):

*General Powers.* Municipalities have the following general powers, subject to other provisions of law:

.   .   .   .   .

(7) to levy taxes   .   .   . .

This broad grant of taxing authority, limited only by other provisions of law, is consistent with the second sentence of Article X, Section 1 which requires that "[a] liberal construction shall be given to the powers of local government." This theme of liberal construction and broad local power was reiterated by the legislature in AS 29.48.310–330.[18]

██ The constitutional rule of liberal construction was intended to make explicit the framers' intention to overrule a common law rule of interpretation which required a narrow reading of local government powers.[19] The foregoing summary

---

**15.** Alaska Constitution, Article X, § 1.

**16.** Article X, § 2 of the Alaska Constitution provides:

> *Local Government Powers.* All local government powers shall be vested in boroughs and cities. The State may delegate taxing powers to organized boroughs and cities only.

**17.** Article X, § 3 of the Alaska Constitution provides:

> *Boroughs.* The entire State shall be divided into boroughs, organized or unorganized. They shall be established in a manner and according to standards provided by law. The standards shall include population, geography, economy, transportation, and other factors. Each borough shall embrace an area and population with common interests to the maximum degree possible. The legislature shall classify boroughs and prescribe their powers and functions. Methods by which boroughs may be organized, incorporated, merged, consolidated, reclassified, or dissolved shall be prescribed by law.

**18.** AS 29.48.310–330 provide:

> AS 29.48.310. *General construction.* A liberal construction shall be given to all powers and functions of boroughs and cities conferred in this title.
> AS 29.48.320. *Extent of powers.* Unless otherwise limited by law, boroughs and cities may have and may exercise all powers and functions necessarily or fairly implied in or incident to the object or purpose of all powers and functions conferred in this title.
> AS 29.48.330. *Enumeration of powers.* Specific examples within an enumerated power or function conferred upon boroughs or cities in this title are illustrative of the object and not a limitation on or exclusion from the exercise of the power or function.

**19.** The rule, called Dillon's rule, states:

> [a] municipal corporation possesses and can exercise the following powers and not others. First, those granted in express words; second, those necessarily implied or necessarily incident to the powers expressly granted; third, those absolutely essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable.

*Merrian v. Moody's Executors,* 25 Iowa 163, 170 (1868). The minutes of the constitutional convention reveal that the liberal construction clause of Article X, Section 1 was intended to assure that general law municipalities, as well as those having home rule powers, would not be governed by this rule, but would have their powers liberally interpreted. The following colloquy between delegates Hellenthal and Victor Fischer is illustrative:

HELLENTHAL: Is there a compelling reason for the retention of the last sentence in the section?

V. FISCHER: Mr. President, we were advised by our committee consultants that due to the fact that in the past courts have very frequently, or rather generally interpreted the powers of local government very strictly under something called "Dillon's Rule", or something like that, that a statement to this effect was rather important, particularly in connection with the local government provisions of the article to make sure that it would be interpreted to give it the maximum amount of flexibility that we

should have at least a cautionary effect on the judiciary. We should not be quick to imply limitations on the taxing authority of a municipality where none are expressed.

### III

Section 1 of the ordinance provides:

There is levied a sales tax of three percent (3%) on the sale of all raw fish harvested within the boundaries of the Bristol Bay Borough, measured by their gross sales value in dollars paid by fish buyers.[20]

Appellants argue that this ordinance is a severance tax on a natural resource rather than a sales tax. They further argue that a severance tax may not be imposed by a municipality because of the provisions of Article VIII of the Alaska Constitution governing the ownership, use and management of natural resources. We find it unnecessary to decide whether a municipality is prohibited from levying a severance tax, because the tax in question is a sales tax.

A severance tax is a tax upon the taking or extracting of a resource. It is assessed even though the resource is not to be sold, but merely consumed for personal use. A sales tax is imposed, on the other hand, after the resource has been harvested and reduced to private ownership and only when it is sold.

The ordinance in question taxes only the sale of fish taken within the borough. It has been construed by the borough, as well as by the court below, to apply only to sales which take place within the borough. We accept that construction. One who harvests raw fish need not pay the tax if he does not sell the fish at all or, if he wishes to sell them, if he does so outside the boundaries of the borough. Therefore, the sales price is not, as our dissenting colleague suggests, merely a measure for a severance tax. The tax is a sales tax on the sale of fish caught and sold within the boundaries of the borough.

### IV

We next turn to the question whether municipal taxation of raw fish has been preempted by the state. The state does manage the harvesting of fish to a very detailed extent. Likewise, some of the incidents of the sale of raw fish are regulated.[21] In addition, the state levies a license tax on salmon canneries based on three percent (3%) of the value[22] of raw fish obtained for processing each year. A certain percentage of the amount collected by the state for the tax is refunded to the municipality in which it is collected.[23]

Merely because the state has enacted legislation concerning a particular

---

desire to have in it and to provide the maximum powers to the legislature and to the local government units to carry out the intent of this article.

. . . . .

HELLENTHAL: Now I refer to Section 11. Doesn't Section 11 clearly reverse this rule that you refer to as Dillon's Rule?
V. FISCHER: That would apply to home rule, cities and boroughs, but the point is that there may be a lot of local government units in Alaska over the years that may not be granted the home rule authority by the legislature and it may not want to adopt a home rule charter. Alaska Constitutional Convention Proceedings, Part 4, 2690–96.

**20.** Ordinance No. 32, *supra* note 2.

**21.** *See* AS 16.10.270–296.

**22.** The value is artificially determined. It is considered to be equal to a five year average

wholesale price for the finished product. AS 43.75.010.

**23.** AS 43.75.130 and .135 provide:

*Refund to local governments.* The commissioner of revenue shall pay to each organized borough and each city of the first class 10 percent of the amount of tax revenue collected in the borough or city from taxes levied by §§ 10–90 of this chapter.

*Additional refund to boroughs and cities.* In addition to the payment allowed in § 130 of this chapter, the commissioner of revenue shall pay to each organized borough 10 percent of the amount of tax revenue collected in the borough from taxes levied by §§ 10–90 of this chapter and shall pay to each city of the first class located in the unorganized borough 10 percent of the amount of the tax revenue collected in the city from taxes levied by §§ 10–90 of this chapter.

subject does not mean that all municipal power to act on the same subject is lost. We have consistently rejected application of any such concept in our cases dealing with home rule municipalities.[24] We do so now with respect to general law municipalities because our constitution requires that their powers be liberally construed as well.[25] We believe that an appropriate accommodation can be made between the state and general law municipalities by a rule which determines preemption to exist, in the absence of an express legislative direction or a direct conflict with a statute, only where an ordinance substantially interferes with the effective functioning of a state statute or regulation or its underlying purpose.[26]

As indicated, the State of Alaska regulates the taking of fish quite extensively and to some extent regulates the sale of fish. However, the ordinance at issue is intended only to raise money, and has no regulatory component. We see no direct or indirect conflict between the State's regulation of fish harvesting or fish sales and the ordinance in question.

We have also noted the state license tax on salmon canneries and the refund of certain of the revenues it generates to municipalities.[27] That tax with its revenue sharing provision is not different in kind from the general gross receipts tax of the Alaska Business License Act.[28] Under the latter a percentage of the money collected in a municipality is also refunded to the municipality.[29] In most of its ramifications the general gross receipts tax is in essence a state tax on retail sales;[30] it would obviously be wrong to conclude merely because it taxes sales that a municipality is thereby precluded from taxing the same sales. Courts have taken different views on whether a local tax should be prohibited because there exists a statewide tax of a similar character or on the same or related commodities.[31] In view of the constitutional and statutory command that municipal powers be broadly interpreted in Alaska, we adopt the view that there is no general prohibition against like municipal and state taxes. In the present case it is doubtful that the Bristol Bay Borough tax will have the effect of decreasing state revenue because the state license tax base is computed without permitting any deduction for other taxes.[32] Moreover, the fact that a local tax may reduce somewhat the revenues generated by a state tax has not been regarded as sufficient to preclude the local tax.[33]

Because we do not perceive any substantial interference caused by the ordinance in question with the functioning of any state law, we are unable to impute to the legisla-

---

24. *Jefferson v. State,* 537 P.2d 37, 43 n. 33 (Alaska 1974); *Rubey v. City of Fairbanks,* 456 P.2d 470, 475 (Alaska 1969).

25. See Part II of this opinion.

26. Note, *Conflicts Between State Statutes and Municipal Ordinances,* 72 Harv.L.Rev. 737, 745 (1959); *cf. Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 98 S.Ct. 988, 994, 55 L.Ed.2d 179, 188–89 (1978) where the court stated with respect to federal preemption of state laws: "[a] conflict will be found 'where compliance with both federal and state regulations is a physical impossibility . . . ,' or where state 'law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " (citations omitted).

27. See footnotes 22 and 23.

28. AS 43.70.010 *et seq.*

29. AS 43.70.080.

30. *See* AS 43.70.010(a)(5) and (7) which exempt wholesale sales and sales by processors and manufacturers.

31. Examples of cases holding no general prohibition are: *Mulligan v. Dunne,* 61 Ill.2d 544, 338 N.E.2d 6 (1975); *Berman v. City of Denver,* 156 Colo. 538, 400 P.2d 434 (1965); *Newton v. City of Tuscaloosa,* 251 Ala. 209, 36 So.2d 487, 495–496 (1948); *cf. City of Anchorage v. Chugach Electric Ass'n,* 252 F.2d 412, 416 (9th Cir. 1958) (Territorial tax and municipal tax on same activity permissible). The contrary view is expressed in *Haefner v. City of Youngstown,* 147 Ohio St. 58, 68 N.E.2d 64 (1946).

32. AS 43.75.010(b).

33. *ABC Distributing Co. v. City of San Francisco,* 15 Cal.3d 566, 125 Cal.Rptr. 465, 542 P.2d 625, 630 (Cal.1975); *Ainsworth v. Bryant,* 34 Cal.2d 465, 211 P.2d 564 (Cal.1949).

ture an intent to preclude municipalities from taxing the sale of raw fish. We are supported in that conclusion by the fact that where the legislature has levied a tax on other natural resources and has intended that resource to be free from local taxes it has directly expressed that intention. Such an intention was expressed as early as 1955 in the Oil and Gas Properties Production Tax.[34] Other statutes containing an expression of exclusivity are the current Oil and Gas Properties Production Tax,[35] and the Oil and Gas Exploration, Production and Pipeline Transportation Property Tax.[36]

### · V

▮ Appellants' next contention is that if the tax is a sales tax it is on a specific commodity and municipalities may only impose general sales taxes. Appellants rely on AS 29.53.415(a) which provides:

> A borough may levy and collect a sales tax not exceeding three percent on sales or rents, and on services made within the borough. The sales tax may apply to any or all of these sources. Exemptions may be granted by ordinance.

Appellants contend that the exemption provision of this statute implies that a sales tax must be general. We do not agree.

The statute states no limits on what may be exempted, and there is nothing in the statute which expressly requires a general tax. Moreover, the term "sales tax" carries no connotation of generality. The first sales taxes used in this country were selective rather than general and selective sales taxes are not unusual.[37] Also bearing on our conclusion that AS 29.53.415(a) permits a selective sales tax are the constitutional and statutory requirements that a broad construction be given to municipal powers.[38]

Further, the evolutionary development of the present language of AS 29.53.415(a) indicates that this statute was not meant to be limited to general sales taxes. In 1949, the Territorial Legislature empowered municipalities to levy a "consumer sales tax" on "*all retail* sales and services made within the municipality." [39] (emphasis added) Thus, as the law stood in 1949, a sales tax was required to be general. In 1953, rents were added to the items subject to sales taxes.[40] In 1957, the legislature added authority for the creation of exemptions from taxation and ratified all prior exemptions.[41] In 1959, the word "all" was placed in front of "rents" and "services" as well as "retail sales". The law as it then read authorized a municipality

> [t]o levy and collect a consumer's sales tax not exceeding three percentum of the sales price on *all retail sales,* on *all rents,* and on *all services,* made within the municipality, and such consumer's sales tax may be levied and collected at the option of the council or any one or more of the three preceding tax sources. . . . Provided, however, that any municipality may provide by ordinance for exemption from the tax levied hereunder if not otherwise expressly prohibited by law.[42] (emphasis added)

After recodification in 1962, the sales tax authorization was contained in AS 29.10.-357–366 and AS 07.10.140 without substantive change. In 1972, the law was recodified, amended to its present form, and placed in AS 29.53.415.[43] The major changes between the old and new statute were the elimination of the limitation that a tax be imposed only on *retail* sales and the elimination of the word "all" as a modi-

---

**34.** AS 43.55.010, *et seq.* (repealed 1977).

**35.** AS 43.55.017.

**36.** AS 43.56.030.

**37.** Note, *The State Retail Tax: A Critical Reexamination of Underlying Policy,* 1 Ga.L.Rev. 503 (1967); *State ex rel. Roddey v. Byrnes,* 219 S.C. 485, 66 S.E.2d 33, 43 (S.C.1951).

**38.** See Part II of this opinion.

**39.** § 1(b) Ch. 38 SLA 1949.

**40.** § 1(b) Ch. 121 SLA 1953.

**41.** §§ 1(b) and 2 Ch. 151 SLA 1957.

**42.** § 1 Ch. 66 SLA 1959.

**43.** Ch. 118 SLA 1972.

fier of what may be taxed. We can think of no purpose for these amendments other than the obvious: municipalities were meant to have the power to levy sales taxes on nonretail, as well as retail sales, and to tax some, as well as all, transactions.

AFFIRMED.

RABINOWITZ, Justice, dissenting in part.

I disagree with the court's conclusion that the tax provided for in Bristol Bay Borough Ordinance No. 32 is a sales tax. As I analyze the ordinance, it calls for a severance tax on the harvesting of fish within the boundaries of the Bristol Bay Borough.

A severance tax is a tax levied on the severance of natural resources from the soil or water. *Phillips Petroleum Co. v. Heath,* 254 Ark. 847, 497 S.W.2d 30 (1973). A taxing entity is incapable of levying a severance tax on resources which have been severed outside of its boundaries. *Gulf Refining Co. of Louisiana v. McFarland,* 154 La. 251, 97 So. 433, 435 (1923), *aff'd per curiam,* 264 U.S. 573, 44 S.Ct. 402, 68 L.Ed. 856 (1924). On the other hand, it is in the power of the taxing entity to levy a sales tax upon all items sold within its jurisdiction, regardless of where the severance of the resource occurred.[1]

Here the tax provided for is bottomed on the prerequisite that the taxable resource, raw fish, be harvested within the borough's boundaries. If, in fact, the fish were caught outside the borough's boundaries but sold within its borders, then the sale would elude the ordinance's reach. Thus, I would hold that the contested tax is a severance tax and would in turn address the question of whether the imposition of a severance tax by the borough is prohibited by the provisions of Article VIII of the Alaska Constitution pertaining to the ownership, use and management of natural resources.

In my opinion, the severance tax imposed by Bristol Bay Borough does violate the provisions of Article VIII of the Alaska Constitution which reserve the benefits from, and control over management of the fisheries resource to all the people of the state.[2] The effect of the borough's ordinance is to exclusively appropriate to its own benefit, and that of its residents, the use of a natural resource which is reserved to all of the people of the state for their common use. Article VIII, Section 2 of the Alaska Constitution reserved to the legislature, not the borough, the authority to act as to this resource. Absent a delegation by the legislature to the borough, I conclude that the ordinance contravenes Alaska's

---

1. It is clear that a severance tax can be measured by the sales price or market value of the resource involved.

2. Article VIII of the Alaska Constitution provides, in part:

   Section 2. General Authority. The legislature shall provide for the utilization, development, and conservation of all natural resources belonging to the State, including land and waters, for the maximum benefit of its people.

   Section 3. Common Use. Wherever occurring in their natural state, fish, wildlife, and waters are reserved to the people for common use.

   Section 4. Sustained Yield. Fish, forests, wildlife, grasslands, and all other replenishable resources belonging to the State shall be utilized, developed, and maintained on the sustained yield principle, subject to preferences among beneficial uses.

   Section 5. Facilities and Improvements. The legislature may provide for facilities, improvements, and services to assure greater

utilization, development, reclamation, and settlement of lands, and to assure fuller utilization and development of the fisheries, wildlife, and waters.

   Section 15. No Exclusive Right of Fishery. No exclusive right or special privilege of fishery shall be created or authorized in the natural waters of the State. This section does not restrict the power of the State to limit entry into any fishery for purposes of resource conservation, to prevent economic distress among fishermen and those dependent upon them for a livelihood and to promote the efficient development of aquaculture in the State.

   Section 17. Uniform Application. Laws and regulations governing the use or disposal of natural resources shall apply equally to all persons similarly situated with reference to the subject matter and purpose to be served by the law or regulation.

Constitution. This disposition makes it unnecessary for me to reach the further question of whether municipal taxation of raw fish has been preempted by existing state legislation or regulations.