NORTH KENAI PENINSULA ROAD
MAINTENANCE SERVICE AREA
and Bill McGahan, Appellants,

v.

KENAI PENINSULA BOROUGH,
Appellee.

No. S–4754.

Supreme Court of Alaska.

April 16, 1993.

John R. Strachan, Anchorage, for appellants.

Kristine A. Schmidt, Deputy Borough Atty., Kenai Peninsula Borough, for appellee.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

COMPTON, Justice.

Kenai Peninsula Borough Ordinance 91–18 abolished the North Kenai Peninsula Road Maintenance Service Area (North Service Area) and consolidated it with three other service areas in the Kenai Peninsula Borough (Borough). North Service Area and Bill McGahan sought a judgment declaring the ordinance null and void and enjoining its enforcement. They also filed a Motion for Preliminary Injunction. The superior court denied their motion and dismissed their suit. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1981 the Borough Assembly enacted Ordinance 81–63, which proposed the establishment of the North Service Area. The proposition was subject to approval by a majority of the people voting within the area. The proposition would allow road maintenance services to be provided within the North Service Area. A five member board elected from residents of the service area was to advise the mayor and the Assembly regarding the management of the North Service Area. No mill levy could be established without further voter approval. Three virtually identical ordinances proposing companion maintenance service areas were enacted at the same time.[1] All four service areas were approved by the voters in their areas. The Assembly then passed ordinances providing for the operation and organization of the service areas.[2]

In 1985 the Assembly placed on the ballot in each service area a proposition which would give the service area power to provide for road improvement and to levy up to one-half mill for road improvements. A majority of the voters in each service area approved the proposition for its respective service area.

On August 6, 1991, the Assembly enacted Ordinance 91–18,[3] which repealed the ordinances establishing the four service areas and created the Kenai Peninsula Borough Road Service Area in their stead. The ordinance did not add to or modify any of the powers previously vested in the four service areas. Under Ordinance 91–18, the mayor appoints the new service area board.

Bill McGahan was a resident of the North Service Area and a member of its board at the time of its disestablishment. He filed a Complaint and Motion for Preliminary Injunction on behalf of himself and the North Service Area. The complaint requested: 1) an injunction restraining the implementation of Ordinance 91–18, and 2) a declaratory judgment finding Ordinance 91–18 null and void.

After two hearings, the superior court orally denied the motion for preliminary injunction. The court later issued a written decision concluding that: 1) North Service Area is not an independent political entity capable of suing or being sued,[4] 2) whether Ordinance 91–18 violated the will of the people is a nonjusticiable political question, and 3) Ordinance 91–18 is valid without voter approval. Since the court concluded that North Service Area's claims were without merit, it denied the motion for preliminary injunction. The court then

---

1. Ordinances 81–55, 81–60, and 81–53, proposing the South, Central, and East Kenai Peninsula Service Maintenance Areas respectively.

2. Ordinance 82–29, codified as KPB 16.56, provided for the North Service Area.

3. Ordinance 91–18 provides an effective date of July 1, 1991, although it was not enacted until August 6, 1991. The superior court concluded as a matter of law that the effective date of the

ordinance was August 7, 1991, the day after it was passed by the Assembly. No party argues that this conclusion is incorrect.

4. The superior court concluded that a decision regarding McGahan's standing to sue was unnecessary, since it ultimately decided that his claims had no merit. Unless McGahan had standing, however, the court should not have reached the merits of his claims.

dismissed the suit because it concluded that the "basic issue" was nonjusticiable.

## II.  DISCUSSION

### A.  *Standard of Review*

■ This court applies an abuse of discretion standard when reviewing an order granting a temporary injunction. *State v. Kluti Kaah Native Village*, 831 P.2d 1270, 1272 n. 4 (Alaska 1992). The same standard applies when reviewing an order denying a preliminary injunction.

■ We apply to preliminary injunctions a "balance of hardships" approach which entails a three part test: 1) the plaintiff must be faced with irreparable harm; 2) the opposing party must be adequately protected; and 3) the plaintiff must raise serious and substantial questions going to the merits of the case; that is, the issues raised cannot be "frivolous or obviously without merit." *Kluti Kaah*, 831 P.2d at 1273; *Alaska Pub. Utils. Comm'n v. Greater Anchorage Area Borough*, 534 P.2d 549, 554 (Alaska 1975). The "serious and substantial question" standard applies only where the injury which will result from the preliminary injunction is relatively slight in comparison to the injury which the person seeking the injunction will suffer if the injunction is not granted. *State v. United Cook Inlet Drift Ass'n*, 815 P.2d 378, 378–79 (Alaska 1991). Where the injury from the preliminary injunction is "not inconsiderable and may not be adequately indemnified by a bond, a showing of probable success on the merits is required before a temporary restraining order or a preliminary injunction can be issued." *Id.* at 379.

■ The decision to dismiss a suit because it involves a nonjusticiable political question is a question of law, subject to independent review. "On questions of law, this court is not bound by the lower court's decision; ... Our duty is to adopt the rule of law that is most persuasive in light of precedent, reason, and policy." *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979). Questions of standing to sue and the validity of an ordinance adopted without voter approval are also questions of law, subject to independent review.

### B.  *Standing*

#### 1.  North Service Area

The superior court concluded that the North Service Area did not have standing to sue, since it was not an independent legal entity. Using our independent judgment, we conclude that the superior court was correct.

■ As a general rule, only independent legal entities may sue or be sued. *See Waller v. Butkovich*, 584 F.Supp. 909, 925 (M.D.N.C.1984); *Meyer v. City and County of Honolulu*, 729 P.2d 388, 390 n. 1 (Hawaii App.1986) *aff'd in part, reversed in part*, 69 Haw. 8, 731 P.2d 149 (1986). Alaska law specifically gives cities and boroughs corporate status, and the right to sue and be sued. AS 09.65.070–.080, AS 29.04.010–.020, AS 29.35.010(14). There are no similar provisions for service areas.

■ A service area is a specific geographical area within which a municipal service is furnished by a borough. Its powers derive from statute, charter and ordinance. Service areas have no corporate status or right to sue under any Alaska statute. Neither the Kenai Borough charter nor Borough ordinances confer such status or right. Therefore, the North Service Area does not have standing to sue the Borough.

#### 2.  Bill McGahan

■ The superior court did not decide whether Bill McGahan had standing to sue, since it concluded that his claims had no merit and ultimately dismissed the suit on the ground that the "basic issue" presented was nonjusticiable. In order to reach the issues of the validity of Ordinance 91–18 and justiciability, we must first determine whether McGahan has standing to sue.

"[T]he concept of standing has been interpreted broadly in Alaska." *Moore v. State*, 553 P.2d 8, 23 (Alaska 1976). "The basic requirement for standing in Alaska is adversity." *Trustees for Alaska v. State*, 736 P.2d 324, 327 (Alaska 1987), *cert. de-*

*nied,* 486 U.S. 1032, 108 S.Ct. 2013, 100 L.Ed.2d 601 (1988). This court recognizes interest-injury standing [5] and taxpayer-citizen standing. *Id.* Arguably McGahan has standing under either of these doctrines. However, taxpayer-citizen standing is more appropriate to his circumstances.

■ Taxpayer-citizen standing will be granted if certain criteria are satisfied. First, the case must be one of public significance. Second, the plaintiff must be "appropriate." This means that the plaintiff must have an adverse interest. If another party is more directly affected by the outcome, the plaintiff may be denied standing. Finally, the plaintiff must capably and competently represent the position asserted. *Trustees,* 736 P.2d at 329–30.

■ Whether Ordinance 91–18 is valid without voter approval is a matter of public significance. Consolidation of the service areas directly affects the manner in which road maintenance and improvement services are provided in and by the Borough.

As a resident of the North Service Area, McGahan is an appropriate plaintiff. No plaintiff or class of plaintiffs would be more directly affected by the outcome. It is not argued that he has not or cannot capably and competently advocate his adversarial position.

We conclude that McGahan has standing to challenge the ordinance which altered the service area by consolidating it with three other service areas.

### C. *Justiciability of Ordinance 91–18*

The superior court ultimately dismissed the suit because it concluded that the question whether Ordinance 91–18 violated the will of the people is a political question upon which the court should withhold judgment. To the superior court, the "basic issue" was whether the ordinance was "right or wrong."

■ This court has recognized that political questions are best left to legislative bodies. "It is not a court's role to decide whether a particular statute or ordinance is a wise one: the choice between competing notions of public policy is to be made by elected representatives of the people." *Concerned Citizens of So. Kenai Peninsula v. Kenai Peninsula Borough,* 527 P.2d 447, 452 (Alaska 1974).

McGahan does not argue that the Borough's perceived violation of the will of the people is a separate basis for invalidating Ordinance 91–18. Rather, he argues that the ordinance was adopted illegally, *i.e.* without voter approval. Hence, the will of the people, as expressed in 1981 and 1985, was frustrated. Construed in context, this statement is nothing more than a political comment.

On the other hand, the Borough argues that the court correctly held that the ordinance was valid without voter approval. Since the suitability of the ordinance was the only issue remaining, suit was properly dismissed as presenting a nonjusticiable political question.

■ The superior court erred in dismissing this suit as presenting solely a nonjusticiable issue. The validity of Ordinance 91–18 without voter approval presents a justiciable issue. We will therefore decide whether Ordinance 91–18 required voter approval.[6]

---

**5.** For interest-injury standing, "a plaintiff must have an interest adversely affected by the conduct complained of." *Trustees for Alaska,* 736 P.2d at 327.

**6.** The superior court dismissed the case on its own motion after two hearings on North Service Area's Motion for Preliminary Injunction. We may uphold the decision of the superior court if an alternative ground would support, as a matter of law, the result reached by the superior court. *Carlson v. State,* 598 P.2d 969, 973 (Alaska 1979); *Stordahl v. Government Employees Ins. Co.,* 564 P.2d 63, 67 n. 16 (Alaska 1977);

*Moore v. State,* 553 P.2d 8, 20–216 (Alaska 1976). We will therefore consider whether an order of dismissal would be appropriate on the record before us. *Carlson,* 598 P.2d at 973. We may uphold the decision to dismiss if the complaint failed to state a claim on which relief can be granted. Alaska R.Civ.P. 12(b)(6).

The complaint is based on the invalidity of Ordinance 91–18 without voter approval. The superior court has decided that the ordinance is valid. McGahan has had ample opportunity to argue the issue. We may therefore reach the issue and uphold the dismissal if, as a matter of

### D. *Validity of Ordinance 91–18 Without Voter Approval*

McGahan argues that when the voters approved the exercise of power by the North Service Area to maintain roads, a compact arose between the people and the Borough. The voters approved a service area which provided for local control by an elected board. On the other hand, the new service area has an appointed board, does not provide for local control, and in fact encompasses three other service areas. The terms of the compact approved in 1981, and altered in 1985 after another vote, can only be changed if the voters approve it.

The Alaska Constitution provides that service areas "may be established, altered, or abolished by the assembly, subject to the provisions of law or charter." Alaska Const. Art. X, § 5. Alaska Statute 29.35.-450(a) codifies this provision, restating that service areas may be established, operated, altered, or abolished by ordinance.

■■■ Alaska Statutes and Borough ordinances require the Borough to seek voter approval to exercise a power for which the service area has been established. AS 29.-35.490(a)(1); Kenai Peninsula Borough Ordinance (KPBO) 16.04.060 (1981). However, no voter approval is necessary to operate, alter or abolish a service area. Thus, Ordinance 91–18 is valid without voter approval if it is merely an "alteration" of existing service areas.

The change from an elected to an appointed board is an alteration in the administration of the service area. The Assembly may provide for an elected or an appointed board, or no board at all. AS 29.-35.460. Changing the method of the selection of the board is an alteration of the service area which does not require voter approval.

■■ Although consolidating four service areas into one is a more fundamental change, the same powers are being exercised within the same areas. The mayor and the Assembly still have final authority. KPBO 16.56.080, which provided for the powers and duties of the North Service Area board, is virtually identical to KPBO 16.41.070, which provides for the powers and duties of the new board. In each, the board's power to provide for improvement and maintenance of roads is subject to Assembly approval and appropriation of funds. Since the mayor and Assembly are exercising the same powers within the same geographical area and are subject to the same constraints with respect to approval and appropriation that existed before the alteration, voter approval is not required. Ordinance 91–18 is valid.

## III. CONCLUSION

In view of the trial court's correct determination that Ordinance 91–18 is valid without voter approval, the trial court did not abuse its discretion in denying McGahan's motion for preliminary injunction.[7] The decision to deny the preliminary injunction is AFFIRMED.

The superior court improperly dismissed the suit on the ground that it presented a nonjusticiable political question. However, McGahan would not succeed on his justiciable claim that Ordinance 91–18 is invalid because it was adopted without voter approval. On the alternative ground that the complaint failed to state a claim on which relief can be granted, the dismissal is AFFIRMED.

law, the ordinance is valid without voter approval.

7. The trial court made no findings with respect to the potential for irreparable harm without the preliminary injunction or the possibility of protecting the Borough if the preliminary injunction were issued. It is therefore unclear whether the trial court applied the "serious and substantial question" standard or the "probable success on the merits" standard. Even under the less rigorous "serious and substantial question" standard, the trial court did not abuse its discretion. No authority supported the position that the voters and the Borough entered a "compact" which precluded the Borough from altering the service area as allowed by statute.