Nola Bragg and Link FANNON,
Appellants and Cross–
Appellees,

v.

MATANUSKA–SUSITNA BOROUGH,
Appellee and Cross–Appellant.

Nos. S–12576, S–12596.

Supreme Court of Alaska.

Aug. 29, 2008.

Kenneth P. Jacobus, Kenneth P. Jacobus, P.C., Anchorage, for Appellants/Cross-Appellees.

Nicholas Spiropoulos, Borough Attorney, Palmer, for Appellee/Cross-Appellant.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

Nola Bragg and Link Fannon, residents of the Matanuska–Susitna Borough, appeal the superior court's order upholding the legality of the Borough's tax on cigarettes and other tobacco products. They argue (1) that under AS 29.35.170, the Borough lacks authority to levy an excise tax or any other type of duty apart from "property, sales, and use taxes"; and (2) that to the extent that the Borough's tobacco tax falls within the multistate tax compact's definition of "sales tax,"[1] it cannot remain in force without voter ratification. The Borough cross-appeals the superior court's decision to rule on the merits of Bragg and Fannon's complaint, arguing that the appellants lack standing. Bragg and Fannon qualify for citizen-taxpayer standing, but nothing in the statutes or our case law

interpreting them prohibits the Borough's tobacco tax. We therefore affirm.

## II. FACTS AND PROCEEDINGS

### A. Facts

On May 17, 2005, the Matanuska–Susitna Borough Assembly adopted Ordinance 05–068. The ordinance establishes a self-described "excise tax" on tobacco, assessing fifty mils per cigarette and forty-five percent of the wholesale price of all other tobacco products. The incidence of the tax falls on the person who:

(1) first acquires the cigarettes or other tobacco products within the borough;

(2) brings or causes cigarettes or other tobacco products to be brought into the borough;

(3) makes, manufactures, or fabricates cigarettes or other tobacco products in the borough; or

(4) ships or transports cigarettes or other tobacco products into the borough.[2]

The Borough has stipulated that the ordinance imposed a new tax without voter ratification.

After the tax took effect, Nola Bragg, a voter and resident of the Borough and a smoker, successfully petitioned to place a tax repeal measure on the October 4, 2005 ballot. That measure failed by some 2,000 votes.

### B. Proceedings

On November 16, 2005, Nola Bragg and Link Fannon filed suit. Their complaint alleged that "[t]his 'excise' tax is not a property tax, sales tax, or use tax, and is outside of the authority of the Borough to levy and collect." Alternatively, they asserted in their complaint that "[i]f this 'excise' tax is a sales or use tax, then it cannot be levied and collected without first submitting the tax to the voters for ratification." Bragg and Fannon maintained that the Borough's unauthorized taxation violated taxpayers' constitutionally protected right to due process of law

---

1. Codified at AS 43.19.010, art. II, § 7.

2. Matanuska–Susitna Borough Ordinance (MSB) 05–068 (2005).

and requested injunctive relief requiring a refund of previously collected taxes.

The Borough answered Bragg and Fannon's complaint on December 7, 2005, standing by the legality of its tobacco tax and relying on a number of affirmative defenses, including a challenge to Bragg and Fannon's standing to bring their suit. Bragg and Fannon moved for summary judgment on January 11, 2006, and the Borough filed its opposition and cross-motion for summary judgment soon afterwards.

During oral argument on the cross-motions, Superior Court Judge Beverly W. Cutler sought to clarify the basis upon which Bragg and Fannon claimed standing after their counsel admitted that neither claimant sells, transports, or manufactures tobacco products and that only Bragg smokes. In response to questioning, counsel for Bragg and Fannon maintained that "any resident of the Borough would have the standing to make the same argument."

On August 8, 2006, the superior court issued its decision granting the Borough's motion for summary judgment. The court began by "[a]ssuming (without deciding) that plaintiffs have 'citizen-taxpayer' standing to bring this action," despite its observation that Bragg and Fannon had not "submitted 'documentary materials' to demonstrate that they are voters and residents of the Borough nor otherwise supplemented their pleadings to establish standing of any kind." The court then went on to "find[ ] as a matter of law that the Borough presently is authorized to assess and collect the disputed tax." Specifically, the court agreed with the Borough that "the disputed tax falls within the general taxation powers of municipal government."

The superior court based its finding on "a long history of Alaska Supreme Court precedent broadly interpreting municipal taxation powers." In particular, the court referred to

our decisions in *Liberati v. Bristol Bay Borough*[3] and *City of St. Mary's v. St. Mary's Native Corp.*,[4] in which we held that "article X, section 1 of the Alaska Constitution restrains us from implying limitations 'on the taxing authority of a municipality where none are expressed.' "[5] The trial court reasoned that Bragg and Fannon had failed to demonstrate an express limitation on the Borough's taxing authority and that *Liberati* and *St. Mary's* prevented the court from implying such a limitation.

Finally, the superior court held that the tobacco tax did not require voter ratification. In doing so, the court appears to have adopted the Borough's characterization of the tax as an "excise tax." The superior court pointed out that Bragg and Fannon "cite no authority in support of their argument that the tax was required to be put to a vote prior to the Borough's assessment and collection," and that in fact, they relegated their entire argument on the issue to a single sentence in their memorandum in support of summary judgment. The superior court thus adopted "the Borough's arguments that no initial vote was required," but nonetheless "observe[d] that a petition to repeal the enabling ordinance was defeated at the polls."

Bragg and Fannon appeal the superior court's summary judgment ruling, and the Borough cross-appeals the superior court's recognition of Bragg and Fannon's standing to sue.

## III. STANDARD OF REVIEW

We review de novo a superior court's grant of summary judgment.[6] This review applies to constitutional issues and any other questions of law,[7] including "[q]uestions of standing to sue and the validity of an ordinance adopted without voter approval."[8] We will uphold a grant of summary judgment when the record presents no

---

**3.** 584 P.2d 1115 (Alaska 1978) (upholding borough's imposition of a sales tax on raw fish after a public hearing had taken place).

**4.** 9 P.3d 1002 (Alaska 2000) (upholding repeal of sales tax exemptions without voter ratification).

**5.** *Id.* at 1007 (quoting *Liberati*, 584 P.2d at 1121).

**6.** *Id.* at 1005.

**7.** *Evans ex rel. Kutch v. State*, 56 P.3d 1046, 1049 (Alaska 2002).

**8.** *N. Kenai Peninsula Rd. Maint. Serv. Area v. Kenai Peninsula Borough*, 850 P.2d 636, 639 (Alaska 1993).

genuine issue of material fact and one party is entitled to judgment as a matter of law.[9]

## IV. DISCUSSION

Bragg and Fannon argue that AS 29.35.170(a) allows the Borough to only assess and collect property taxes, sales taxes, and use taxes. They contend that, as an excise tax, the fifty-mil per-cigarette tariff falls outside of the Borough's taxing authority. They characterize the forty-five percent tax on other tobacco products as a sales tax, requiring voter ratification under AS 29.45.670 before the Borough may lawfully assess and collect the tax. The Borough cross-appeals on the question whether Bragg and Fannon have standing, maintaining that only plaintiffs upon whom the legal incidence of the tax falls may bring suit to challenge the tax.

### A. The Superior Court Did Not Err in Reaching the Merits of the Case.

■ The superior court assumed without deciding that Bragg and Fannon have "citizen-taxpayer" standing to bring their action. In *North Kenai Peninsula Road Maintenance Service Area v. Kenai Peninsula Borough*, however, we intimated that lower courts may not skip the standing inquiry.[10] We therefore address standing as a preliminary matter.

"The concept of standing has been interpreted broadly in Alaska."[11] For citizen-taxpayer standing, the doctrine most applicable to Bragg and Fannon, we have set out three criteria:

First, the case must be one of public significance. Second, the plaintiff must be "appropriate." This means that the plaintiff must have an adverse interest. If another party is more directly affected by the outcome, the plaintiff may be denied standing. Finally, the plaintiff must capably and competently represent the position asserted.[12]

The Borough urges us to hold that Bragg and Fannon lack standing because their case is of insufficient public significance and because Bragg and Fannon are inappropriate plaintiffs. We disagree.

■ First, the Borough argues that the tax fails to rise to the level of public significance because "only distributors, wholesalers and manufacturers pay the tax." The Borough argues that the refund of all tobacco taxes "already collected," which Bragg and Fannon sought in their complaint, concerns "only the few entities which will receive a financial benefit if the plaintiffs prevail, and therefore, this is not a matter of 'public concern' such that plaintiffs should be allowed standing."

■ Our case law, however, does not define matters of public concern so narrowly. For example, in *Gilman v. Martin*, we upheld residents' standing to challenge a borough's land sale ordinance, stating that "[a]ny resident or taxpayer of a municipality has a sufficient interest in the disposition of a significant number of acres of the municipality's land to seek a declaratory judgment as to the validity of the disposition."[13] Our holding in *Gilman* makes clear that while a challenged transaction must be significant for citizen-taxpayer standing to apply, it need not directly involve the litigants.[14] Here, the

---

9. *City of St. Mary's*, 9 P.3d at 1005.

10. 850 P.2d at 639 n. 4 ("The superior court concluded that a decision regarding McGahan's standing to sue was unnecessary, since it ultimately decided that his claims had no merit. Unless McGahan had standing, however, the court should not have reached the merits of his claims.").

11. *Id.* at 639 (quoting *Moore v. State*, 553 P.2d 8, 23 (Alaska 1976)).

12. *Id.* In *Trustees for Alaska v. State, Department of Natural Resources*, we further noted that we have never denied citizen-taxpayer standing "except on the basis that the controversy was not of public significance, or on the basis that the plaintiff was not a taxpayer." 736 P.2d 324, 329 (Alaska 1987) (citations omitted).

13. 662 P.2d 120, 123 (Alaska 1983).

14. By way of comparison, we denied citizen-taxpayer standing to a neighboring landowner who sought to contest the state's sale of twenty acres of land because the amount of land was not sufficiently "significant." *Hoblit v. Comm'r of Natural Res.*, 678 P.2d 1337, 1341 (Alaska 1984).

Borough estimated that it would spend sixty thousand dollars to collect revenues of over four and a half million dollars each year from its tobacco tax. Thus, while only a small number of businesses may directly pay the tobacco tax, the tax appears to implicate "matters of significant public concern." [15]

■ Second, the Borough argues that Bragg and Fannon lack standing because they "are not taxpayers under this tax." But we have only denied citizen-taxpayer standing where a claimant paid no taxes whatsoever.[16] The Borough does not dispute that both Bragg and Fannon are "taxpayers" in the sense that they pay various taxes to the Borough as residents of the Borough.[17] But the Borough ignores any general interest that Bragg and Fannon might claim in assuring that the Borough adheres to the laws governing its power to assess and collect taxes. Rather, the Borough contends that Bragg and Fannon lack standing because they have not shown that they pay "any portion of the [tobacco] tax because there is no evidence that the tax is, in fact, 'passed on.'" According to the Borough, because "[d]istributors, wholesalers and manufacturers may pass on all, part or none of this tax," only a tobacco distributor, wholesaler, or manufacturer may bring this challenge.

But the Borough's assertion that the tax might not translate into higher retail tobacco prices strains credulity. The Borough's own information memorandum highlights the "significant health related benefits associated with a cigarette and tobacco products tax." Presumably these benefits will follow a decrease in tobacco use caused by increased retail prices. The information memorandum also predicts that the tobacco tax will "diversify revenues," "help alleviate the real prop-

erty tax burden," and "provide an additional source of funds for education." Although profit-minded businesses may pay part of this predicted increase in taxes, they may also rely in part on the relatively inelastic demand of tobacco consumers,[18] who as Bragg and Fannon point out, are "captive to an addictive product." Thus, the Borough's argument that individual tobacco consumers cannot sue because they are not taxed must fail.

■ Finally, the Borough claims that Bragg and Fannon lack standing because "there are more appropriate plaintiffs who are willing and able to bring suit, but have not." The Borough points to Bragg and Fannon's assertion in the trial court that several retailers and distributors were available to join the lawsuit if necessary. However, while such plaintiffs may be "more directly affected by the challenged conduct in question," the Borough presented no evidence that they are "likely to bring suit." [19] And we have recognized that "the mere possibility that [a more appropriate plaintiff] may sue does not mean that appellants are inappropriate plaintiffs." [20] Moreover, the Borough's argument appears to misinterpret the test set out in *North Kenai Peninsula Road Maintenance Service Area* that "[i]f another party is more directly affected by the outcome, the plaintiff *may* be denied standing." [21] The Borough appears to argue that only the *most* directly affected parties may bring a claim, otherwise the court *must* deny standing. That is not the law.

The Borough cites case law from other jurisdictions in support of its challenge to Bragg and Fannon's standing. For example, the Borough points to a decision by the Montana Supreme Court that disallowed a

---

15. *Trustees for Alaska,* 736 P.2d at 329.

16. *See Greater Anchorage Area Borough v. Porter & Jefferson,* 469 P.2d 360 (Alaska 1970) (holding that partnership that paid no taxes and did not appear on assessment rolls of borough had no standing to bring an action challenging the existence of the borough).

17. The Borough does not challenge the assertion that Bragg and Fannon are residents of the Matanuska–Susitna Borough.

18. *See, e.g.,* Babak A. Rastgoufard, *Too Much Smoke and Not Enough Mirrors: The Case Against Cigarette Excise Taxes and for Gasoline Taxes,* 36 Urban Lawyer 411, 423 (Summer 2004) (noting that cigarette smokers are only "to some degree, price sensitive").

19. *Trustees for Alaska,* 736 P.2d at 329.

20. *Id.* at 330.

21. 850 P.2d at 640 (emphasis added).

gasoline retailer's challenge to a tax assessed to gasoline distributors.[22] And the Borough argues that an Alabama Supreme Court decision [23] upholding a consumer's right to challenge a tax on wine nevertheless advances the Borough's theory that Bragg and Fannon lack standing here because they are not distributors, manufacturers, or anyone else required by law to pay the tax. Finally, the Borough refers to the United States Supreme Court's holding in *Warth v. Seldin* that a collection of civic organizations, builders, and minority and low-income individuals did not have standing to challenge an adjacent town's allegedly discriminatory zoning ordinances.[24] The *Warth* court reasoned that standing may not be predicated on "generalized grievances." [25]

The United States Supreme Court, however, has interpreted the federal constitution to limit standing in a way that Alaska's constitution does not.[26] And even that court has acknowledged that "[t]he person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy." [27] The law gives various procedural rights to Borough taxpayers, such as the right to a referendum,[28] before certain taxes may take effect. To the extent that Bragg and Fannon claim that the Borough has encroached upon those rights, their standing rests on a firm basis in the law.

### B. The Superior Court Did Not Err in Upholding the Borough's Authority To Levy Its Tobacco Tax.

■ Alaska Statute 29.35.010(6) grants municipalities "general powers, subject to other provisions of law . . . to levy a tax or special assessment, and impose a lien for its enforcement." The Alaska Constitution requires that a "liberal construction shall be given to the powers of local government units." [29] And we have interpreted that constitutional imperative "to make explicit the framers' intention to overrule a common law rule of interpretation which required a narrow reading of local government powers." [30] Here, Bragg and Fannon ask us to resurrect that bygone common law rule. We decline.

Bragg and Fannon point out that the "general delegation" of authority under AS 29.35.010(6) is "subject to other provisions of law." In particular, they argue that this general delegation of authority is subject to a limitation implied by AS 29.35.170(a). That section mandates that "a borough shall assess and collect property, sales, and use taxes that are levied in its boundaries, subject to AS 29.45." [31] Bragg and Fannon argue that because no statute makes a similar express delegation of authority to levy excise taxes, the Borough lacks the authority to do so.

Bragg and Fannon marshal little support for their statutory interpretation. They cite Justice Rabinowitz's dissent in *Liberati* for the proposition that Alaska law does not empower boroughs to levy a severance tax. In *Liberati*, we upheld a borough's imposition of a tax on raw fish against a challenge that the tax impermissibly encroached upon the state's exclusive right to regulate natural resources.[32] Bragg and Fannon point out that the *Liberati* dissent disputes the majority's characterization of the fish tax as a

---

22. See *Carter v. Mont. Dep't of Transp.*, 274 Mont. 39, 905 P.2d 1102, 1103 (1995).

23. See *Stiff v. Ala. Alcoholic Bev. Control Bd.*, 878 So.2d 1138, 1144 (Ala.2003) (reasoning that the "plain language of the statute indicates that the table wine excise tax is levied on the consumer").

24. 422 U.S. 490, 493, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

25. *Id.* at 499, 95 S.Ct. 2197.

26. See *Trustees for Alaska*, 736 P.2d at 327 ("Standing in our state courts is not a constitutional doctrine; rather, it is a rule of judicial self-restraint based on the principle that courts

should not resolve abstract questions or issue advisory opinions.").

27. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

28. See AS 29.45.670.

29. Alaska Const. art. X, § 1.

30. *Liberati*, 584 P.2d at 1120.

31. AS 29.35.170(a).

32. 584 P.2d at 1117–24.

"sales tax."[33] But neither the majority opinion nor the dissent in *Liberati* suggests that a municipality lacks the authority to levy any tax not expressly contemplated by the law. Rather, the *Liberati* dissent theorizes that a tax on raw fish encroaches upon the state's power to regulate natural resources pursuant to article VIII of the Alaska Constitution.[34] Bragg and Fannon cite no parallel constitutional provision implicated by the Borough's tax on tobacco.

Bragg and Fannon intimate for the first time in their reply brief that a distinction between home rule and general law municipalities may bear some relevance on the Borough's tax authority. But AS 29.35.010 grants general powers to "all municipalities." Bragg and Fannon also invoke our holding in *Fairbanks North Star Borough v. Howard* that a borough cannot impose a real property lien to collect sales tax from a subsequent purchaser.[35] The *Howard* decision, however, hinges on an "established general rule that tax liens arise only through specific legislative authorization."[36] Again, no parallel restriction on the Borough's power to levy taxes applies here. In short, Bragg and Fannon acknowledge that AS 29.35.010(6) grants local governments broad taxing authority, but they fail to establish a legal justification for carving the Borough's tobacco tax out from that grant of authority.

## C. The Superior Court Correctly Held that the Tobacco Tax Did Not Require Voter Ratification.

Alaska Statute 29.45.670 provides that a "new sales and use tax or an increase in the rate of levy of a sales tax approved by ordinance does not take effect until ratified by a majority of the voters at an election." Bragg and Fannon contend that the Borough seeks to levy an illegal sales tax on tobacco products other than cigarettes without the required voter ratification. Bragg and Fannon assert that measuring a tax on the basis of the taxed commodity's value, i.e., forty-five percent of the wholesale price,[37] renders the tax a sales tax or ad valorem tax. They rely primarily on the following treatise passage to support their contention:

> Excise taxes are taxes upon the manufacture, sale or consumption of commodities, upon licenses to pursue certain occupations, and upon corporate privileges. They include any taxes which do not fall within the classification of a poll or property tax. Thus, the term "excise tax" has come to mean and include practically any tax that is not an ad valorem tax. An ad valorem tax is a tax imposed on the basis of the value of the article or thing taxed. An excise tax is a tax imposed on the performance of an act, the engaging in an occupation, or the enjoyment of a privilege.[38]

Bragg and Fannon highlight the treatise's statement that "the term excise tax has come to mean and include any tax that is not an ad valorem tax." Bragg and Fannon argue that the tax on non-cigarette tobacco products fits the definition of an ad valorem tax.

In support of this proposition, Bragg and Fannon cite a single case, from the Commonwealth Court of Pennsylvania. In *Blair Candy Co. v. Altoona Area School District,* that court held that a cigarette tax was an excise rather than a sales tax, in part because the tax was levied on a per-cigarette

---

33. *Id.* at 1124 (Rabinowitz, J., dissenting).

34. Article VIII of the Alaska Constitution provides, in part:

> Section 2. General Authority. The legislature shall provide for the utilization, development, and conservation of all natural resources belonging to the State, including land and waters, for the maximum benefit of its people. Section 3. Common Use. Wherever occurring in their natural state, fish, wildlife, and waters are reserved to the people for common use.

35. 608 P.2d 32, 34 (Alaska 1980) (reasoning that "a real property lien is beyond the scope of what may be 'necessarily or fairly implied in or incident to' the authority to collect a sales tax, particularly since its impact may fall on an innocent landowner"). The statute at issue in *Howard*, AS 29.48.320, has since been repealed. Ch. 74, § 88, SLA 1985.

36. 608 P.2d at 33.

37. While the Borough levies part of the tobacco tax on a per-cigarette basis, for other tobacco products, the tax is based upon wholesale price.

38. 16 Eugene McQuillan, The Law of Municipal Corporations § 44.190 (Dennis Jensen & Gail O'Gradney eds., 3d ed.2003) (citations omitted).

basis.[39] Bragg and Fannon maintain that we cannot construe the Borough's tax on non-cigarette tobacco products as an excise tax because the Borough assesses it on the basis of wholesale value, rather than unit of production. Other factors, however, influenced the *Blair Candy* court's decision:

> The cigarette tax is named an *excise* tax. An excise tax is defined as a tax on the enjoyment of a privilege or tax on the manufacture, sale or consumption of a commodity. The cigarette tax is basically then a tax on the consumption of a commodity and no matter how many times a cigarette is sold in the Commonwealth, it is subject to the cigarette tax only once . . . . [40]

Indeed, the one-time incidence of the Borough's tax, its label as an "excise tax," and its express purpose of providing a disincentive to tobacco consumption in the Borough, put it squarely within the *Blair Candy* court's definition of "excise tax."

Bragg and Fannon go on to invoke the Multistate Tax Compact's definition of "sales tax." But this statutory definition does not advance their argument any more than our case law does. Codified at AS 43.19.010, article II, section 7, the Compact defines a "sales tax" as

> a tax imposed with respect to the transfer for a consideration of ownership, possession or custody of tangible personal property or the rendering of services measured by price of the tangible personal property transferred or services rendered and which is required by state or local law to be separately stated from the sales price by the seller, or which is customarily separately stated from the sales price . . . .

Bragg and Fannon argue that "[f]or virtually all tobacco products brought into the borough, there would be a transfer, for consideration, of ownership, possession, or custody of the product as part of the bringing of the tobacco product into the borough." Moreover, they highlight the Borough's measurement of the tax on tobacco products "by price."

But regardless of the taxable transactions that take place, the Borough's tobacco tax does not require any transfer of ownership, possession, or control to trigger a taxable event. More than a sales tax, it resembles an import or manufacturing tax. The taxable event that falls on a distributor who first "brings or causes cigarettes or other tobacco products to be brought into the borough" may occur months or years before the sale of those tobacco products. Indeed, as the Borough points out, the taxed tobacco products may never be sold at all at the retail level.

In conclusion, the Borough's tobacco tax targets the consumption of cigarettes and other tobacco products in the Borough. The means of assessing the tax for certain categories of tobacco products does not alter its basic character as an excise tax. Consequently, AS 29.45.670's voter ratification requirement does not apply.

## V.  CONCLUSION

For the reasons detailed above, we AFFIRM the judgment of the superior court.

---

**39.**   149 Pa.Cmwlth. 420, 613 A.2d 159 (1992).

**40.**   *Id.* at 161 (citation omitted).