CITY OF YAKUTAT, Appellant,
Cross-Appellee,

v.

Frank L. RYMAN, Jr., Appellee,
Cross-Appellant.

Nos. 6033, 6099.

Supreme Court of Alaska.

Nov. 5, 1982.

Patrick M. Anderson, Hedland, Fleischer & Friedman, Anchorage, for appellant, cross-appellee.

L.B. Jacobson, Robertson, Monagle, Eastaugh & Bradley, Juneau, for appellee, cross-appellant.

Before BURKE, C.J., and RABINOWITZ, CONNOR and MATTHEWS, JJ.

## OPINION

RABINOWITZ, Justice.

The City of Yakutat is a first class city not within an organized borough. It has the power to levy general property taxes in accordance with the procedures set out in AS 29.53.010–.390.[1] Under those procedures, the municipal assessor assesses real property at its value as of January 1 of the assessment year.[2] On the basis of this information, the assessor prepares an assessment roll containing a description of all taxable property, the assessed value of this property, and the names and addresses of the owners of property subject to taxation.[3] The assessor then provides written notice to each person named in the assessment roll; this notice is to be mailed at least 30 days prior to the equalization hearings.[4] The city assembly sits as a board of equalization for the purpose of hearing any appeals from the determinations of the municipal assessor.[5] Any resultant changes or adjustments in property valuations must be certified by the board to the assessor within seven days, and the assessor is then directed to file the final assessment roll by June 1.[6] Finally,

1. AS 29.43.020 provides:

 *Assessment and tax collection.* Home rule and first class cities outside boroughs may assess, levy and collect a general property tax. A property tax if levied must be assessed, levied and collected as provided by ch. 53 of this title for boroughs. Cities outside boroughs may levy and collect sales and use taxes as provided by ch. 53 of this title for boroughs.

2. AS 29.53.060(a) reads:

 *Full and true value.* (a) The assessor shall assess property at its full and true value as of January 1 of the assessment year, except as provided in this section and AS 29.53.030, 29.53.035 and 29.53.160. The full and true value is the estimated price which the property would bring in an open market and under the then prevailing market conditions in a sale between a willing seller and a willing buyer both conversant with the property and with prevailing general price levels.

3. AS 29.53.100(a) reads:

 The assessor shall prepare an annual assessment roll. The roll contains
 (1) a description of all taxable property;
 (2) the assessed value of all taxable property;
 (3) the names and addresses of persons with property subject to assessment and taxation.

4. AS 29.53.110 reads:

 *Assessment notice.* (a) The assessor shall give every person named in the assessment roll a notice of assessment, showing the assessed value of his property. On each notice is printed a brief summary of the dates when taxes are payable, delinquent and subject to penalty and interest, and the dates when the board of equalization will sit.
 (b) Sufficient assessment notice is given if mailed by first class mail 30 days before the equalization hearings. If the address is not known to the assessor, the notice may be addressed to the person at the post office nearest the property. Notice is effective on the date of mailing.

5. AS 29.53.135.

6. AS 29.53.140 reads:

 *Hearing.* (a) If an appellant fails to appear, the board of equalization may proceed with the hearing in his absence.
 (b) The appellant bears the burden of proof.
 (c) The only grounds for adjustment is proof of unequal, excessive or improper valuation based on facts which are stated in a valid written appeal timely filed or proved at the hearing.
 (d) The board shall certify its actions to the assessor within seven days.

the assembly determines the rate of levy before June 15 of each assessment year, and tax statements are mailed to property owners by July 1 of the assessment year.[7]

In 1974 the City failed to assess or levy real property taxes. The City did not provide assessment notices to property owners, there were no equalization hearings and tax statements were not mailed to property owners. In 1975 separate assessment notices for 1974 and 1975 were mailed to municipal property owners on August 29, and the mill levy for both years was established on September 6, 1975. The City held an equalization hearing on September 30, and tax statements were mailed to property owners on October 7. During 1976 the assessment notices apparently were timely but the mill levy was not established until June 24 and the tax statements were mailed on or about July 20.[8]

On or about July 26, 1977 Ryman paid under protest $4,430.57 in taxes, which represented his tax liability for the years 1974, 1975, and 1976.[9] On July 27, 1977, Ryman filed a complaint against the City asserting eleven separate claims for relief.[10] Ryman subsequently moved for voluntary dismissal of the first, second, third, fourth, fifth, seventh, eighth, and ninth claims; the eleventh claim which was in the nature of a motion for costs and attorney's fees was reserved

for post-trial determination by the court. Thus, of Ryman's original eleven claims for relief only the sixth and tenth remained as of the date set for trial. In addition there were two counterclaims filed by the City: the first sought penalty and interest charges allegedly owed by Ryman due to delinquent payment of city sales taxes, the second sought costs and attorney's fees incurred by the City in defending the dismissed claims. Ryman's sixth claim, challenging certain conveyances of land by the City, and the City's counterclaim for sales taxes were settled by stipulation leaving Ryman's tenth claim, for refund of property taxes, for decision by the superior court.[11]

After a hearing on cross-motions for summary judgment, the superior court entered judgment in favor of Ryman for the 1974 and 1975 taxes and in favor of the City for 1976. Ryman and the City then filed opposing motions for costs and attorney's fees. At the hearing on these motions the superior court determined that the litigation involved questions of public interest and awarded Ryman, who it determined was the prevailing party, $5,028.98 in costs and $15,000 in attorney fees. The City appealed the superior court's decision on the 1974 and 1975 taxes and its award of costs and attorney's fees to Ryman. Ryman cross-appeal-

---

(e) The assessor shall enter the changes and certify the final assessment roll by June 1.

7. AS 29.53.170(b) reads:

The assembly shall annually determine the rate of levy before June 15. By July 1 the tax collector shall mail tax statements setting out the levy, dates when taxes are payable and delinquent, and penalties and interest.

The remaining sections of AS 29.53 which set out procedures for collection of taxes and enforcement of tax liens are not relevant to the present dispute.

8. The parties disputed the date of the 1976 mailing. Although the defendant's tax statement was postmarked July 20, the City contended that the statements were mailed on June 30, which would be one day prior to the statutory deadline. The superior court found that the date of mailing was probably closer to the July 20 date alleged by Ryman.

9. Mr. Ryman owned three parcels of property against which taxes were levied, as follows:

| Property Description | 1974 | 1975 | 1976 |
|---|---|---|---|
| USS 2881, Lot 61 | $129.21 | $783.73 | $2,533.20 |
| USS 2881, Lot 6 | $ 38.22 | $ 26.95 | $ 82.32 |
| USS 2881, Lot 81 | $262.44 | $137.10 | $ 437.40 |
| Total | $429.87 | $947.78 | $3,052.92 |

10. In his complaint Ryman charged that the City also failed to comply with the provisions of its own local ordinances governing the assessment of property taxes. On appeal, however, the parties have directed their arguments solely to the effect of the City's noncompliance with the provisions of the state statutes. Our discussion of the issues is accordingly limited. See State v. O'Neill Investigations, Inc., 609 P.2d 520, 528 (Alaska 1980); Lewis v. State, 469 P.2d 689, 691–92 (Alaska 1970).

11. The City agreed that its claim for costs and attorney's fees should be reserved for later determination under Civil Rule 82.

ed challenging the court's ruling on the 1976 tax and its denial of full attorney's fees.

The City concedes that in 1974 and 1975 it failed to meet the deadlines set out in AS 29.53.170(b) for the setting of the mill levy (June 15) and the mailing of tax statements (July 1), as provided in AS 29.53.170(b). The City also admits that in 1976 it failed to set the mill levy by June 15; there remains some dispute over whether the City met the July 1 deadline for mailing tax statements to property owners. Thus the principal question presented in this appeal is whether the property taxes for 1974, 1975, and 1976 are invalid due to the untimeliness of the City's assessments and levies.

Ryman asserts that the statutory deadlines are mandatory and that strict compliance with them is necessary to make a levy valid. AS 29.43.020 provides that a first class city outside a borough "must" assess taxes in accordance with the procedures of AS 29.53 and AS 29.53.170(b), which states that the mill levy "shall" be determined before June 15 and that tax statements "shall" be mailed by July 1. Ryman argues that the language of the statutes evidences a clear legislative intent to impose mandatory procedural guidelines on the exercise of taxing powers by first class cities outside boroughs. The City contends that these deadlines are directory rather than mandatory and that precise conformity to them is not a condition precedent to the imposition of a valid tax. It argues that in order to invalidate a tax for failure to comply with the statutory deadlines the aggrieved taxpayer must establish that he was prejudiced by any delay.

The superior court rejected Ryman's argument that the property taxes were void unless the City strictly complied with the statutory deadlines. Although it did not employ the term "directory", the superior court ruled that "substantial compliance" with the statutory requirements is sufficient to protect taxpayers' rights and to establish a valid tax. The court concluded that the City failed substantially to comply with relevant statutory provisions in 1974 and 1975 and Ryman was thus entitled to a refund of his tax payments for these years. The court went on to find that there was substantial compliance by the City in 1976 and that the 1976 levy therefore was valid.

We begin our analysis with the premise that the City is obligated to comply with statutory restrictions on its taxing powers. This leads us to the question whether anything less than strict compliance with these "obligatory" statutory requirements invalidates the resulting tax. To answer this question we must consider several factors.[12]

First, where specific time requirements are accompanied by negative words that signify that the acts shall not be done at any time other than those designated, courts are constrained to hold that an assessment may not be made in violation of the statutory schedule. *Anaconda Co. v. Department of Revenue,* 278 Or. 723, 565 P.2d 1084, 1088 (1977); *In Re McLean Trucking Co.,* 281 N.C. 242, 188 S.E.2d 452, 457 (1972). In this case the terms of AS 29.53.170(b) do not indicate that the specific dates were intended to be absolute limits on the authority of local taxing officials. While the statute provides a schedule for setting the tax rate and mailing tax statements, it does not state that non-compliance invalidates all subsequent attempts at compliance. In addition, we note that there is no statement in the applicable statutes regarding the legal effect of noncompliance by the local taxing body. Therefore, we conclude that the legislature has not provided a clear signal of its intent with regard to noncompliance with these statutory deadlines.

---

12. Initially, we note that this controversy is not resolved simply by asking whether the legislature intended for the local taxing authorities to follow the prescribed procedures. As the Oregon supreme court has stated:

Such an issue cannot be decided by examining whether the legislature "directed" that the procedure be followed or "mandated" it, for the issue arises only when the legislative words make compliance obligatory.

*Anaconda Co. v. Dept. of Revenue,* 278 Or. 723, 565 P.2d 1084, 1087 (1977).

■ Second, statutory requirements designed to protect taxpayers in their dealings with the taxing authority or to facilitate taxpayer input into the assessment process are more likely to be classified as mandatory. An early annotation, after noting that it was impossible to formulate any universal rules due to the diversity of statutory provisions, made the following observation:

Generally, however, it may be observed that where the purpose of the statute is to protect the taxpayer, the provision as to the time when an act is to be performed by a tax official or board is ordinarily construed to be mandatory, especially where there are negative words in the statute that the act shall not be done at any other time. On the other hand, where the purpose of the statute is not to protect the taxpayer, but merely to set up a guide for the tax officials, a provision as to the time when an act is to be performed by a tax official or board is ordinarily construed to be merely directory, especially where there are no negative words in the statute that the act shall not be done at any other time.[13]

■ We have held that statutory provisions governing the form and duration of notice to the taxpayer as to his tax liability or his right to contest the assessment must be strictly construed; total compliance is necessary to protect the taxpayer and to validate the taxing authority's action. *Stephens v. Rogers Construction Co.,* 411 P.2d 205, 207 (Alaska 1966); *Johnson v. Miller,* 391 P.2d 437, 440–41 (Alaska 1964). In *Stephens* we held that the local board's failure to post the required ten-day notice of the tax hearing or to establish the date, mode, and manner of assessment or to publicly equalize property values prior to fixing the mill levy resulted in an invalid tax.

The reason for these conclusions is that statutory provisions relating to notice, to the date, mode and manner of assessment of taxes, and to the equalization of valuation of property assessed for taxes are not merely directory in the sense that

they are intended for the guidance of the Board in the conduct of its business, so as to secure order, system and dispatch in the Board's proceedings. Such provisions are designed for the protection of the rights of the taxpayer—to apprise him of the contemplated tax and how and when it will be assessed, and to give him the opportunity to be heard as to the tax obligation that is being imposed upon him. Provisions of this type are mandatory, and when they are not complied with the imposition of the tax is invalid and ineffective.[14]

■ Statutory requirements which are intended to serve primarily as guidelines for the orderly conduct of public business are more likely to be considered directory. Some courts have held that strict compliance is unnecessary where the statutory provisions establish the schedule for the assessment and levy of taxes, and noncompliance does not affect the taxpayer's right to contest his tax liability. *County of Maricopa v. Garfield,* 109 Ariz. 503, 513 P.2d 932, 933 (1973); *St. Louis County v. State Tax Comm'n,* 529 S.W.2d 384 (Mo.1975); *Parker v. Krick,* 433 Pa. 514, 252 A.2d 648, 649 (1969). *See also* Annot., 151 A.L.R. 248 (1944).

Any effort to apply the analysis outlined above to the statutory provisions in the present case, however, is somewhat problematic. While the statutory deadlines for the assessment and levy of taxes undoubtedly serve to structure and regulate the internal operations of the taxing authorities, they also serve the interests of taxpayers. Compliance with these deadlines provides timely notice to the taxpayer of his annual assessment, thereby allowing the taxpayer to calculate with some degree of certainty the extent of his tax liability and to plan his annual financial affairs so as to meet this obligation. We therefore reject the notion that these deadlines can be characterized solely as administrative guidelines. It does not necessarily follow, however, that a tax levy is invalid whenever the

---

13. Annot., 151 A.L.R. 248, 248 (1944).

14. *Stephens,* 411 P.2d at 207.

taxing authority has failed to comply strictly with the statutory deadlines. While there are instances where a substantial delay in the assessment and fixing of taxes or the mailing of tax statements will seriously prejudice taxpayers' interests, there are also instances where minor deviations from these statutory deadlines will result in little, if any, such prejudice. Rigid adherence to a rule of strict compliance in all cases would in our view be unreasonable.

Third and finally, serious practical consequences will follow from characterizing the statutory deadlines in this case as mandatory. The application of a rule of strict compliance to the statutory deadlines for the levying of taxes could seriously handicap the ,operation of local governments. Any deviation from the statutory norms, however slight or inadvertent, would automatically invalidate the entire assessment process. A significant source of revenue for local governments would be forfeited due to the mistake or dereliction of public officials.

■ After considering all of the factors described above, we conclude that the statutory deadlines for the assessment of taxes, the setting of the mill levy, and the mailing of tax statements should be construed as directory. Given the lack of negative prohibitions in the statute as to time of performance, the fact that these deadlines do not govern the right to notice or the opportunity for a hearing (even though in some cases they may offer significant protection to taxpayers' interests), and the potential adverse impact of a strict compliance rule on local governments, we hold that the City's failure to meet the statutory deadlines does not automatically invalidate its decisions.

Having declined to characterize these deadlines as mandatory, we must establish some standard for determining when the

failure to comply with a "directory" deadline will invalidate the local taxing authority's action. The City argues that the tax should be upheld, regardless of the duration or the extent of the noncompliance, unless the delay results in prejudice to the taxpayer. According to the City, the burden should be on the taxpayer to show that the assessor overvalued the property and that the noncompliance deprived the taxpayer of an opportunity to contest his assessment before the local equalization board. *See Good Development Co. v. Horner*, 260 N.W.2d 524, 530 (Iowa 1977).

■ In our view, when the taxpayer establishes a violation of these "directory" procedures, the burden should be on the taxing authority to demonstrate substantial compliance with the requirements and purposes of the statute.[15] Once a showing of substantial compliance has been made, the taxing authority's action will be upheld unless the taxpayer is able to demonstrate that the noncompliance resulted in substantial prejudice to his interests. Where the local government's action fails to meet the substantial compliance test, however, prejudice to the taxpayer will be presumed and the tax or assessment will be overturned.[16] We now turn to the record in this case.

■ In 1974 the City made no attempt to comply with the statutory requirements. Assessment notices and tax statements were not provided and there were no equalization hearings. The City did not set the 1974 levy until September 1975, and tax statements were not mailed until October 1975, fifteen months after the statutory deadline. In light of these delays we agree with the superior court that there was no substantial compliance of the City's part and thus the 1974 tax was invalid as to Ryman.

**15.** *See Allen v. Pub. Util. Dist. No. 1 of Thurston Cty.*, 55 Wash.2d 226, 347 P.2d 539, 543 (1959). *See also* 1A C.D. Sands, Sutherland Statutory Construction 4th ed. § 25.03, p. 299–300 (1972).

**16.** The substantial compliance test, in our opinion, strikes the proper balance between the interest of taxpayers in having the taxing authority adhere to statutorily-mandated procedures and the interest of the taxing authority and the general public in not having levies declared invalid because of the negligence of the taxing authority's employees.

In 1975 the City was three months late in setting the levy and mailing the tax statements to property owners. While this presents a closer question we conclude that this delay does not constitute substantial compliance as a matter of law. As we indicated previously, the "substantial compliance" rule is intended to allow for minor delays or disruptions in the assessment procedures. The 90-day delay in this case cannot be characterized as minor, and the City has failed to offer any justification for it. We therefore uphold the superior court's ruling that the 1975 tax was invalid as to Ryman.

■ In 1976, the City missed the deadline for setting the mill levy by nine days. We think that despite this minor delay, the City substantially complied with the statute. There is some dispute over the precise mailing date in 1976. Even if we accept Ryman's date of July 20 we think that the resulting 20-day delay falls within the range of substantial compliance. Therefore, the 1976 tax will be upheld unless this delay resulted in some prejudice to Ryman's interests.

Ryman's sole allegation of prejudice is that the City's delay in setting the mill levy caused him to miss the hearing at which the tax rate was established. He claims that he would have been able to attend and participate in the levy hearing if it had been held by the June 15 deadline. As it was, however, he was forced to leave town on business before the City convened the hearing and set the levy. Ryman charges that he was deprived of his right to be seen and heard on the municipal budget and to ascertain his tax liability.

17. The seven abandoned claims involved general challenges to the City's governmental operations. Specifically Ryman alleged that the City failed to comply with statutory provisions regarding the codification of ordinances, the conduct of city counsel meetings and municipal elections, the assessment and collection of local taxes, and the preparation of the budget. In addition, Ryman claimed the City had discriminatorily zoned a parcel of his property thereby precluding its development.

■ We are unpersuaded by Ryman's claims of prejudice. Several courts have held that a violation of a taxing provision does not prejudice the taxpayer's rights unless it deprives him of his right to contest or appeal the assessment. *Good Development Co. v. Horner,* 260 N.W.2d 524, 528 (Iowa 1977); *Parker v. Krick,* 433 Pa. 514, 252 A.2d 648, 649 (1969). While we are not adopting this as the sole test of prejudice we deem it significant that Ryman has not alleged that he was not given an opportunity to contest his assessment or that the delay caused him to incur a late charge or penalty on his taxes. In addition, we note that Ryman's absence was based in part on his own decision to pursue his personal business rather than to wait for the convening of the hearing. While we are cognizant of Ryman's frustration at the City's untimeliness, we do not think that Ryman has made a sufficient showing of prejudice to invalidate the 1976 tax.

Civil Rules 54 and 82 provide for the award of costs and attorney's fees to the prevailing party. In this case the superior court determined that Ryman had prevailed and entered an award of costs and fees in his favor. The City advances two arguments in support of its claim that this ruling was erroneous.

■ First, seven of Ryman's eleven original claims against the City were abandoned by Ryman in his second amended complaint because remedial actions taken by the City had rendered them moot.[17] Although these claims technically were dismissed as moot, the City asserts that it controverted Ryman's allegations as to each of these claims in its answer to the amended complaint, and implies that Ryman's re-

Ryman's motion for voluntary dismissal of these claims was not opposed by the City and was granted by the superior court although the court stated that the proper procedure for partial dismissal should have been an amendment under Civil Rule 15(a) rather than a voluntary dismissal under Civil Rule 41. The propriety of this ruling is not at issue in this appeal.

quest for voluntary dismissal of these claims was a "de facto" triumph for the City. Ryman concedes that these claims were mooted by the City's corrective actions but argues that the City's remedial measures were made in response to his lawsuit. The City contends that it initiated these corrective steps prior to the filing of Ryman's complaint and denies that Ryman's law suit was in any way responsible for them.

The dismissal of a complaint, with or without prejudice, may justify an award of attorney's fees to the defendant as the "prevailing" party. *Hart v. Wolff,* 489 P.2d 114, 119 (Alaska 1971). Moreover, in granting a motion for voluntary dismissal, after the merits of the controversy have been put into issue, the trial court may award costs and attorney's fees to the defendant. *Miller v. Wilkes,* 496 P.2d 176, 178 (Alaska 1972). Thus there is precedent for the City's argument that it "prevailed" on the dismissed claims. In this case, however, the claims were dismissed as moot as a result of the City's corrective actions. Although the City claims its actions were not prompted by the litigation, the superior court found that Ryman's lawsuit provided some impetus for the City's improvement in its operations. Because the City's reaction to Ryman's complaint was at least partly responsible for the claims becoming moot, we conclude that the City has failed to establish that it prevailed as to these claims.

 Next, the City contends that Ryman did not prevail on the tax refund claim. Specifically the City asserts that although the trial court invalidated the property tax for two of the three years in question, Ryman's total recovery was less than one-third of the refund he requested.[18] Ryman contends that the City's emphasis on the monetary award is misleading since it ignores the fact that Ryman's complaint was also intended to force the City to comply with the statutory procedures for assessing property taxes.

The determination of the prevailing party is committed to the trial court's discretion and will be affirmed on appeal unless it is shown that the court abused its discretion by issuing a decision which is arbitrary, capricious, manifestly unreasonable, or improperly motivated.[19]

> [T]he prevailing party to a suit is the one who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not to the extent of the original contention. He is the one in whose favor the decision or verdict is rendered and the judgment entered.[20]

The main issue in this case was the dispute over the effect of the City's noncompliance with the statutory tax procedures. Although the superior court agreed with the City that the statutory deadlines were directory, it ruled that the City's noncompliance invalidated the property taxes for 1974 and 1975. The fact that Ryman failed to recover the full refund does not preclude him from being the prevailing party. *Tobeluk v. Lind,* 589 P.2d 873, 876 (Alaska 1979). Given that Ryman sought to correct the City's taxing procedures as well as to obtain a tax refund, we conclude that the superior court did not abuse its discretion in determining that Ryman was the prevailing party.

Ryman sought $5,028.98 in costs and $47,-640.93 in attorney's fees. The superior court granted Ryman full costs but limited his attorney's fees to $15,000. Ryman contends that this award was insufficient and that he was entitled to full fees under ei-

---

18. Ryman's tax bill in 1974 was $429.87 as compared to $947.78 in 1975 and $3,052.92 in 1976. *See supra* note 9. Thus Ryman's refund of the 1974 and 1975 taxes amounted to $1,377.65; the City retained the 1976 payment.

19. *Tobeluk v. Lind,* 589 P.2d 873, 878 (Alaska 1979); *Continental Ins. Co. v. United States Fid. & Guar. Co.,* 552 P.2d 1122, 1125 (Alaska 1976).

20. *Tobeluk v. Lind,* 589 P.2d 873, 876 (Alaska

ther the "public interest"[21] or "complex litigation"[22] exceptions to Civil Rule 82.

We have held that the purpose of Civil Rule 82 is to provide partial compensation to the prevailing party for costs and fees. *Malvo v. J.C. Penney Co., Inc.,* 512 P.2d 575, 588, 63 A.L.R.3d 1034 (Alaska 1973). Where the litigation involves questions of public interest, however, the prevailing plaintiff may be entitled to full attorney's fees.

> [T]he successful public interest plaintiff, acting as a "private attorney general," should not be penalized by Rule 82 by failing to receive full compensation for the costs of litigating issues of public importance. We hold, therefore, that the trial court may, in its discretion, award full attorney's fees to public interest plaintiffs.[23]

Even though this suit qualifies as public interest litigation, it does not follow that Ryman is automatically entitled to full compensation. As Ryman acknowledges, the decision is still committed to the trial court's discretion. While this discretion may be somewhat narrower than in the usual Rule 82 context[24] the court is not bound to award full fees; it may exclude charges it finds to be unreasonable. In the present case the superior court found that the litigation had gotten out of hand and that both sides had expended unreasonable amounts of time and energy. The court determined that a sum of $15,000 would have been sufficient for Ryman to present this case adequately. After reviewing the record we conclude that the court did not abuse its discretion in refusing Ryman's request for full attorney's fees.

We also reject Ryman's argument that he was entitled to a higher award under the "complex litigation" exception to Civil Rule 82. Under this doctrine we have upheld enhanced awards of fees in cases involving numerous complex issues, extensive time and expense, longer than normal trials, and unusually large claims or recoveries. *Chugach Electric Ass'n v. Northern Corp.,* 562 P.2d 1053, 1063–64 (Alaska 1977), aff'd, 563 P.2d 883 (1977); *Beech Aircraft Corp. v. Harvey,* 558 P.2d 879, 887 (Alaska 1976). In this case most of the claims were dismissed as moot and the rest were disposed of via summary judgment and stipulation. We do not think the issues were particularly complex or difficult and the amounts in controversy were not unusually large.

Finally, the City contends that the trial court erred in awarding Ryman $15,000 in attorney's fees because that award constituted an award of full "reasonable" attorney's fees (*i.e.,* the full fees that a reasonable attorney would have charged Ryman for handling this case) and Ryman did not qualify for an award of full fees under the "public interest" exception. We reject this contention. The trial court correctly characterized this case as public interest litigation, and therefore, even if $15,000 did equal full "reasonable" attorney's fees, the court did not abuse its discretion in awarding Ryman that sum.

The judgment of the trial court is AFFIRMED.

COMPTON, J., not participating.

---

1979), *quoting Buza v. Columbia Lumber Co.,* 395 P.2d 511, 514 (Alaska 1964).

**21.** *Thomas v. Bailey,* 611 P.2d 536, 539 (Alaska 1980); *Anchorage v. McCabe,* 568 P.2d 986, 993–94 (Alaska 1977).

**22.** *Chugach Elec. Ass'n v. Northern Corp.,* 562 P.2d 1053, 1063–64 (Alaska 1977), aff'd, 563

P.2d 883 (Alaska 1977); *Beech Aircraft Corp. v. Harvey,* 558 P.2d 879, 887 (Alaska 1976).

**23.** *Anchorage v. McCabe,* 568 P.2d 986, 993–94 (Alaska 1977).

**24.** *Tobeluk v. Lind,* 589 P.2d 873, 878 n. 11 (Alaska 1979).