CITY OF ST. MARY'S, Appellant,

v.

ST. MARY'S NATIVE CORPORATION
and Alaska Commercial Company,
Appellees.

No. S–8963.

Supreme Court of Alaska.

Sept. 29, 2000.

Rehearing Denied Nov. 27, 2000.

Katherine C. Tank, Perkins Coie, LLP, Anchorage, for Appellant.

David S. Case, P.C., Copeland, Landye, Bennett & Wolf, LLP, Anchorage, for Appellee St. Mary's Native Corporation.

Gregory A. Miller and Colleen J. Moore, Birch, Horton, Bittner & Cherot, Anchorage, for Appellee Alaska Commercial Company.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

FABE, Justice.

### I. INTRODUCTION

In 1986 the voters in St. Mary's approved a three percent sales tax. In implementing the voter-approved tax, the city council exempted transactions exceeding $1,000. In May 1994 the St. Mary's city council repealed that exemption. Because the voters had already approved the three percent tax in 1986, the city council believed that further voter ratification was unnecessary. Alaska Commercial Company and St. Mary's Native Corporation contend that repeal of the exemption was invalid because it was not the subject of a public vote and that notice of the public hearing on the tax was insufficient. Based on these arguments, the superior court invalidated the ordinance repealing the exemption. Because we conclude that a public vote was not required to ratify the repeal of the exemption and that a genuine issue of material fact exists as to whether public notice was sufficient, we reverse.

### II. FACTS AND PROCEEDINGS

The citizens of the City of St. Mary's voted in November 1986 to approve this ballot measure: "Shall the City of St. Mary's levy a 3% sales tax?" The ballot measure passed, receiving over sixty percent of the votes. One month later the St. Mary's city council passed Ordinance 86–3, which implemented the voter-approved sales tax. Ordinance 86–3 was more detailed than the original ballot measure and provided for many exemptions. Notably, the ordinance limited application of the three percent tax to the first $1,000 of each sales transaction.

St. Mary's introduced proposed Ordinance 94–4 in April 1994 to eliminate the exemption for sales in excess of $1,000. The council scheduled a public hearing on the ordinance

for May 3, 1994. Representatives of Alaska Commercial Company (ACC) and St. Mary's Native Corporation (SMNC) attended the meeting at which the city council set the May 3 hearing. The representatives voiced their opposition to the passage of the proposed ordinance.

St. Mary's took steps to give the public notice of the hearing. In accordance with St. Mary's publication procedures, City Manager Walton Smith directed the police to post copies of proposed Ordinance 94–4 and an agenda for the May 3 hearing at the city offices, post office, school, and two local stores, including ACC's store. An officer posted these documents as directed. Smith also faxed copies of proposed Ordinance 94–4 and the meeting agenda to ACC's attorney before the May 3 meeting. The city did not publish the proposed ordinance or notice of the meeting in any newspaper.

The St. Mary's city council held the May 3 meeting as scheduled. The members present passed Ordinance 94–4 unanimously. St. Mary's did not hold a popular vote to ratify the ordinance.

SMNC leased to ACC two commercial properties subject to the St. Mary's sales tax. The leases exceeded $1,000 per month, but SMNC and ACC refused to pay the sales tax on either lease. The city commenced an action in October 1995 to collect back taxes. It also sought a declaratory judgment that Ordinance 94–4 was lawful.

SMNC and ACC moved for partial summary judgment in May 1996. They first argued that Ordinance 94–4 was invalid because it had not been ratified by the voters pursuant to AS 29.45.670. That provision requires that a majority of voters ratify an ordinance enacting "a new sales and use tax or an increase in the rate of levy of a sales

tax."[1] Alternatively, they contended that St. Mary's failed to publish notice of the hearing for Ordinance 94–4 in the newspaper of general circulation in St. Mary's, the *Tundra Drums*, as required by AS 29.25.020(b)(3).[2] St. Mary's responded by arguing that its tax was not "new" and that it did not "increase the rate of levy" and therefore the ordinance did not require voter approval. It also claimed to have complied with the notice requirements. Finally, St. Mary's argued that SMNC and ACC lacked standing to challenge Ordinance 94–4 on notice grounds because they had actual notice of the hearing.

The superior court granted summary judgment to ACC and SMNC. The court reasoned that Ordinance 94–4 was either a new tax or an increase in the rate of levy of a tax that required voter ratification. The superior court reasoned alternatively that St. Mary's failed to satisfy AS 29.25.020(b)(3)'s publication requirement. The court concluded that St. Mary's failed to produce admissible evidence to prove that it properly posted the notices of the ordinance and hearing date. The court also concluded as a matter of law that the *Tundra Drums* was a newspaper of general circulation in St. Mary's, thus requiring St. Mary's to publish a summary of Ordinance 94–4 in it. The court entered judgment, and St. Mary's appeals.

### III. STANDARD OF REVIEW

We review a grant of summary judgment de novo.[3] We will uphold a grant of summary judgment when the record presents no genuine issue of material fact and one party is entitled to judgment as a matter of law.[4] In making this determination, we draw all reasonable inferences of fact in favor

---

1. AS 29.45.670.

2. AS 29.25.020(b)(3) prescribes the requirements for a notice of a hearing adopting a new ordinance: "[A]t least five days before the public hearing a summary of the ordinance shall be published together with a notice of the time and place for the hearing." AS 29.71.800(18) defines "published" as "appearing at least once in a newspaper of general circulation distributed in the municipality or, if there is no newspaper of

general circulation distributed in the municipality, posting in three public places for at least five days."

3. *See Mount Juneau Enters., Inc. v. City & Borough of Juneau*, 923 P.2d 768, 772–73 (Alaska 1996).

4. *See Semlek v. National Bank of Alaska*, 458 P.2d 1003, 1005–06 (Alaska 1969).

of the non-moving party.[5] We review a lower court's resolution of statutory interpretation issues de novo.[6]

## IV. DISCUSSION

### A. Alaska Statute 29.45.670 Did Not Require the Voters of St. Mary's to Ratify Ordinance 94–4.

Whether AS 29.45.670 required the voters to ratify Ordinance 94–4's repeal of the exemption for transactions over $1,000 is a question of statutory construction. Alaska Statute 29.45.670 provides: "A new sales and use tax or an increase in the rate of levy of a sales tax approved by ordinance does not take effect until ratified by a majority of the voters at an election." Therefore, if removing the exemption for transactions exceeding $1,000 can be considered either a "new" sales tax or "an increase in the rate of levy of a sales tax," St. Mary's would have been required to submit the ordinance to a vote, and failure to do so would invalidate Ordinance 94–4.

### 1. Ordinance 94–4 did not increase the "rate of levy."

The "rate of levy" is the fraction that, when multiplied by the value of the transaction or property subject to the tax, determines the amount of tax to be assessed.[7] The classification and valuation of property and transactions to be taxed are determinations independent of quantifying the "rate of levy."[8] Alaska Statute 29.45.650(a) permits municipalities to grant tax exemptions by ordinance without voter

ratification and to decide which transactions may be taxed.[9] Accordingly, repealing the exemption on the second $1,000 of a $2,000 transaction is not an increase in the rate of levy, but an application of the same rate of levy to a portion of a transaction previously immune. Because Ordinance 94–4 simply subjected previously exempt portions of transactions to the original three percent sales tax, the ordinance did not increase the rate of levy of the tax.

ACC and SMNC argue that the term "levy" implies an assessment or collection of tax dollars and not just prescription of the percentage rate at which assets or transactions will be taxed. According to ACC and SMNC, because Ordinance 94–4 applies a three percent tax to the entire transaction, the amount of the tax has jumped, resulting in an increase in the "rate of levy."

ACC and SMNC rely on cases that refer to "rate" as the process of the classification, valuation, and assessment of tax on property or income.[10] But these cases fail to define specifically the term "rate of levy."[11] ACC and SMNC then define the term "levy" as "[t]o assess; raise; execute; exact; tax; collect; gather; take up; seize."[12] ACC and SMNC cobble these definitions of "rate" and "levy" together to conclude that the "'rate of levy of a sales tax' must refer to the entire method of determining the amount of tax due."

This interpretation of the phrase "rate of levy," however, is erroneous. As explained above, the "rate of levy" is the percentage

---

**5.** See Zeman v. Lufthansa German Airlines, 699 P.2d 1274, 1280 (Alaska 1985).

**6.** See Boone v. Gipson, 920 P.2d 746, 748 (Alaska 1996).

**7.** See Dennehy v. Dep't of Revenue, 305 Or. 595, 756 P.2d 13, 19–20 (1988).

**8.** See Trollwood Village Limited Partnership v. Cass County Bd. of County Comm'rs, 557 N.W.2d 732, 734–35 (N.D.1996) ("Section 57–02–01(13), N.D.C.C., also defines 'taxable valuation' as 'the valuation remaining after deducting exemptions and making other reductions from the original assessed valuation, and is the valuation upon which the rate of levy finally is computed and against which the taxes finally are extended.'").

**9.** "[A] borough may levy and collect a sales tax on sales, rents, and on services provided in the borough. The sales tax may apply to any or all of these sources. Exemptions may be granted by ordinance." AS 29.45.650(a).

**10.** See Boyer v. Boyer, 113 U.S. 689, 695, 5 S.Ct. 706, 28 L.Ed. 1089 (1885); General Elec. Credit Corp. v. Oregon State Tax Comm'n, 231 Or. 570, 373 P.2d 974, 980 (1962); State v. Wiley, 177 Wash. 65, 31 P.2d 539, 543 (1934).

**11.** See Boyer, 113 U.S. at 695, 5 S.Ct. 706; General Elec., 373 P.2d at 980; Wiley, 31 P.2d at 543.

**12.** Black's Law Dictionary 629 (abr. 6th ed.1991).

that, when multiplied by the value of the taxable transaction or property, determines the amount of tax owed.[13] Accordingly, St. Mary's elimination of its exemption by ordinance simply subjected transactions exceeding $1,000 to the existing "rate of levy" of three percent.

The Arkansas Supreme Court's resolution of a similar issue is persuasive. In *Morley v. Remmel,*[14] the Arkansas Supreme Court considered whether an act of the legislature eliminating a tax deduction violated a provision of the Arkansas constitution.[15] That provision states that "[n]one of the rates for property, excise, privilege or personal taxes, now levied shall be increased" without either voter approval or approval by a three-fourths majority of the legislature.[16] In upholding the legislature's repeal of the deduction, the court differentiated between the rate of taxes and the valuation of the property or transaction to be taxed. The court concluded that the elimination of the deduction did not increase the rate of taxation but simply subjected more income to the same rate of taxation, an act that was within the legislature's power.[17] Moreover, the court reasoned that equating the *rate* of taxation with the *amount* of taxation was erroneous and unreasonably tied the hands of the legislature.[18]

The *Morley* decision supports St. Mary's contention that there is a distinction between increasing the rate of levy and repealing a specifically granted exemption. Because repealing the exemption for transactions over $1,000 did not increase the rate of levy, voter ratification of Ordinance 94–4 was not required unless it could be considered a "new" tax.

## 2. *Ordinance 94–4 is not a "new" tax.*

In the alternative, ACC argues that applying the sales tax to a previously exempt transaction constitutes a "new" tax requiring voter approval. But Ordinance 94–4 did not create a new tax; the city simply exercised its statutory authority to remove an exemption to the tax previously approved by the voters.[19] ACC and SMNC argue, however, that AS 29.45.650(a) only grants local governments the power to reduce taxes without voter approval, not increase them. We reject this contention.

Alaska Statute 29.45.650(a) grants a municipality the power to grant an exemption to a sales tax by ordinance without voter approval. We conclude that this grant of power implies the power to repeal such an exemption by ordinance. As one commentator has observed:

Specific grant of power to repeal ordinances, however, ordinarily is not necessary since it is the general rule that power to enact ordinances implies power, unless otherwise provided in the grant, to repeal them. It is patently obvious that the effectiveness of any legislative body would be entirely destroyed if the power to amend or repeal its legislative acts were taken away from it.[20]

Moreover, Alaska's constitution and our prior case law require us to interpret AS 29.45.650(a) in favor of the broad power of municipal governments. We have concluded that article X, section 1 of the Alaska Constitution[21] restrains us from implying limitations "on the taxing authority of a municipality where none are expressed."[22] We therefore conclude that when a local govern-

---

13. *See Dennehy,* 756 P.2d at 19–20; *Trollwood,* 557 N.W.2d at 734–35.

14. 215 Ark. 434, 221 S.W.2d 51 (1949).

15. *Id.* at 52–53.

16. *Id.* at 53.

17. *See id.* at 54–55.

18. *See id.* at 57.

19. *See* AS 29.45.650(a) ("Exemptions may be granted by ordinance.").

20. 6 Eugene McQuillin, *The Law of Municipal Corporations* § 21.10, at 261 (rev.3d ed.1998) (footnotes omitted).

21. "The purpose of this article is to provide for maximum local self-government with a minimum of local government units, and to prevent duplication of tax-levying jurisdictions. A liberal construction shall be given to the powers of local government units." Alaska Const. art. X, § 1.

22. *Liberati v. Bristol Bay Borough,* 584 P.2d 1115, 1121 (Alaska 1978).

ment grants an exemption by ordinance and the exemption is not subjected to a public vote, it may repeal that exemption by ordinance without a public vote.

■ Moreover, we conclude that an ordinance repealing a sales tax exemption is not a "new" sales tax requiring voter ratification. Because Ordinance 94–4 did not create the St. Mary's sales tax, but simply modified it, it was not "new" within the meaning of AS 29.45.670. ACC and SMNC argue that because Ordinance 94–4 caused a change in the tax schedule, this change must be considered "new." But ACC's and SMNC's interpretation is too broad. If we were to accept ACC's and SMNC's definition, any alteration of the sales tax would require voter ratification. Not only would this procedure make the refinement of municipal tax schemes cumbersome, but it would also render the phrase "increase in the rate of levy" in AS 29.45.670 superfluous. We construe a statute "so that no part will be inoperative or superfluous, void or insignificant."[23] We conclude that when a municipality repeals a sales tax exemption it does not create a "new" tax for the purposes of AS 29.45.670.

Because Ordinance 94–4 neither increased "the rate of levy" of a sales tax nor created a "new" sales tax, voter ratification of the ordinance was not required. Moreover, no genuine issue of material fact remains with respect to whether a public vote is required.[24] We therefore direct the superior court to enter summary judgment in favor of the City of St. Mary's with respect to the voter ratification requirement.

**B.** *A Genuine Issue of Material Fact Exists as to Whether St. Mary's Complied with the Public Notice Requirements.*

■ Even if AS 29.45.650 and .670 did not require St. Mary's to submit Ordinance 94–4 to a public vote, the city was nevertheless required to provide adequate notice of the public hearing regarding adoption of the ordinance that repealed the exemption for transactions exceeding $1,000. Underlying our analysis of whether St. Mary's provided adequate notice is the presumption that the proceedings of a local government are valid.[25] Accordingly, ACC and SMNC have the burden of establishing that St. Mary's did not provide adequate notice.

Alaska Statute 29.25.020(b)(3) requires notice of a hearing before the adoption of a new ordinance: "At least five days before the public hearing a summary of the ordinance shall be published together with a notice of the time and place for the hearing." Alaska Statute 29.71.800(18) defines "published" as "appearing at least once in a newspaper of general circulation distributed in the municipality, or if there is no newspaper of general circulation distributed in the municipality, posting in three public places for at least five days...." Accordingly, ACC and SMNC can overcome the presumption by demonstrating that a newspaper of general circulation exists in St. Mary's and that St. Mary's failed to publish notice in that newspaper. St. Mary's concedes that it did not publish notice in any newspaper, including the *Tundra Drums*. ACC and SMNC contend that the *Tundra Drums* is a newspaper of general circulation in St. Mary's and that by failing

**23.** *Alascom, Inc. v. North Slope Borough, Bd. of Equalization*, 659 P.2d 1175, 1178 n. 5 (Alaska 1983) (citing 2A C. Sands, *Statutes & Statutory Construction* § 46.06 (4th ed.1973)).

**24.** Although the parties dispute whether the inclusion of the exemption in Ordinance 86–3 affected the voter approval of the sales tax in 1986, this factual dispute is immaterial to the resolution of this case. The language the voters approved in the ballot measure said nothing of the sales tax exemption, and asked simply: "Shall the City of St. Mary's levy a 3% sales tax?" It was only after the voters approved the three percent tax levy that the city council passed Ordinance 86–3 with its exemptions. Once the

voters approved the three percent sales tax, the city council was free to exempt certain transactions, and conversely repeal those exemptions, by ordinance without a public vote.

**25.** *See Liberati*, 584 P.2d at 1118. In *Liberati* we considered whether a local government had held an appropriate public hearing or was required to hold an additional hearing after amending a proposed sales tax ordinance. *Id.* at 1118. We stated that "[t]here is a presumption that proceedings of the governing body of a municipality have been conducted in accordance with law." *Id.* at 1118 (citing Antieau, *Municipal Corporation Law* § 4.19, at 4–38 (1978)).

to publish notice in it the city failed to comply with AS 29.25.020(b)(3).

 1. *ACC and SMNC have standing to argue that St. Mary's did not comply with the notice requirements despite having actual notice of the public hearing.*

■ As a threshold matter, we must ascertain whether ACC and SMNC have standing to raise the argument that notice of the public hearing on Ordinance 94–4 was insufficient. St. Mary's contends that because ACC and SMNC had actual notice of the May 3, 1994 hearing, they lack standing to contest the alleged lack of proper notice.

But St. Mary's argument rests on the assertion that the challenged notice procedure did not injure ACC and SMNC because they had actual notice. This argument oversimplifies Alaska's "interest-injury" test for standing.[26] "[A] party asserting standing must demonstrate a sufficient personal stake in the outcome of the controversy to ensure the requisite adversity."[27] If the ordinance is valid, ACC and SMNC's taxes will rise substantially. This possibility is a sufficient personal stake in the outcome to provide ACC and SMNC with standing.

■ Moreover, ACC and SMNC have standing under Alaska's "taxpayer-citizen" test.[28] "Taxpayer-citizen status is a sufficient basis to challenge allegedly illegal governmental conduct when the issues raised are of significant public concern and when the taxpayer-plaintiff is a suitable advocate of the issues involved in the lawsuit."[29] ACC and SMNC are certainly interested taxpayers. Although a court may properly deny standing to a taxpayer-plaintiff where "there

is a plaintiff more directly affected by the challenged conduct in question"[30] who is a more likely litigant, St. Mary's does not indicate an appropriate alternative plaintiff who had no notice of the hearing. We conclude that ACC and SMNC's actual notice of the May 3, 1994 hearing does not preclude them from having standing in this case.

 2. *Publication in a newspaper of general circulation is mandatory.*

■ We next consider St. Mary's argument that the publication requirement is directory rather than mandatory. If publication is mandatory, then St. Mary's must strictly comply with the notice provision.[31] If publication is directory, then the ordinance is valid if St. Mary's substantially complied with the publication requirement.[32] To make this determination, we consider three primary factors: (1) whether the words of the statute compel us to consider the requirement mandatory, (2) whether the statute is "designed to protect taxpayers in their dealings with the taxing authority" or was designed to serve as a guideline "for the orderly conduct of public business," and (3) whether "serious practical consequences will follow" from characterizing the statutory guidelines as mandatory.[33]

First, we consider whether the statute contains "negative words that signify that the acts shall not be done," which would indicate that "non-compliance invalidates all subsequent attempts at compliance."[34] If such words of limitation are present, we are constrained to consider the provision mandatory.[35] But the publication requirement contains no such words, stating merely that "a summary of the ordinance shall be publish-

---

26. *Kleven v. Yukon–Koyukuk Sch. Dist.*, 853 P.2d 518, 525 (Alaska 1993).

27. *Id.* (quoting *Hoblit v. Commissioner of Natural Resources*, 678 P.2d 1337, 1340 (Alaska 1984) (internal punctuation omitted)).

28. *Id.*

29. *Id.* at 526 (citing *Trustees for Alaska v. State, Dep't of Natural Resources*, 736 P.2d 324, 329 (Alaska 1987); *State v. Lewis*, 559 P.2d 630, 635 (Alaska 1977), *cert. denied*, 432 U.S. 901, 97 S.Ct. 2943, 53 L.Ed.2d 1073 (1977)).

30. *Id.*

31. *See City of Yakutat v. Ryman*, 654 P.2d 785, 789–91 (Alaska 1982).

32. *See id.*

33. *Id.*

34. *Id.* at 789.

35. *See id.*

ed." [36] Because the express words of limitation contemplated by the court in *City of Yakutat v. Ryman* are absent, we must examine the other factors.

 Second, we are likely to consider as mandatory those "statutory requirements designed to protect taxpayers in their dealings with the taxing authority." [37] While the publication requirement applies to every ordinance, this case involves a tax ordinance. And our case law supports the proposition that statutory notice provisions with respect to tax liability "must be strictly construed." [38] On the other hand "[s]tatutory requirements which are intended to serve primarily as guidelines for the orderly conduct of public business are more likely to be considered directory." [39] In this context, the publication requirement is more like a statute requiring notice of tax liability. The publication requirement prescribes the method municipalities must use for communicating with the public. Adequate public notice is the way that taxpayers learn of potential changes in their tax liability. Therefore, the publication requirement is more than an administrative guideline; it is an integral part of the relationship between a municipality and its citizens.

Last, we consider the "serious practical consequences [that] will follow from characterizing the statutory deadlines in this case as mandatory." [40] Characterizing the requirements of AS 29.25.020(b)(3)'s publication requirement as mandatory has serious consequences. Because St. Mary's has an established policy of posting public notices, classifying the requirement as mandatory could call into question the validity of other ordinances passed by the City of St. Mary's since 1994. Moreover, there is no evidence in the record that other bush communities publish notice in the *Tundra Drums*.

 But considering the publication requirement to be directory has serious consequences as well. Requiring publication of ordinances serves important policy goals because it helps facilitate the local government process. As one commentator has observed:

> [A] publication requirement operates to avoid hasty or ill-considered action. Although not an insurance against local maladministration, action by ordinance is a reflective process that affords an opportunity for expression of opinion; this manifestly is the rationale of statutory requirements of publication or notice of pendency of ordinances. Other purposes of a publication requirement may be to advise those interested that the matter is up for consideration, or to inform them with reference to any ordinance that has been adopted so that they may regulate their actions and conduct accordingly.[41]

Indeed, the publication requirement plays such an important role in local government that many jurisdictions have held that, when statutes require publication of ordinances in a newspaper of general circulation and such a paper exists in a community, publication of an ordinance in that newspaper is mandatory.[42]

We conclude that the better approach is to declare the publication requirement mandatory rather than directory. In order to satisfy the publication requirement of AS 29.45.670, local governments must publish notice in a newspaper of general circulation

---

**36.** AS 29.25.020(b)(3).

**37.** *Ryman,* 654 P.2d at 790.

**38.** *Id.;see Stephens v. Rogers Constr. Co.,* 411 P.2d 205, 207 (Alaska 1966); *Johnson v. Miller,* 391 P.2d 437, 440–41 (Alaska 1964).

**39.** *Ryman,* 654 P.2d at 790.

**40.** *Id.* at 791.

**41.** 5 Eugene McQuillin, *Municipal Corporations* § 16.76, at 372 (footnotes omitted).

**42.** *See Town of Beverly Shores Plan Comm'n v. Enright,* 463 N.E.2d 246, 248 (Ind.1984); *Board of Zoning Appeals of Monroe County v. Berndt,* 502 N.E.2d 1349, 1352 (Ind.App.1987); *State v. Allen,* 361 Mo. 963, 237 S.W.2d 489, 490 (1951); *Lower Gwynedd Township v. Gwynedd Properties, Inc.,* 527 Pa. 324, 591 A.2d 285, 287–88 (1991) ("The right of the public to participate in the enactment of municipal ordinances required that municipalities strictly follow the prescribed notice procedures in order to validate any ensuing legislation."); *Wilgus v. City of Murfreesboro,* 532 S.W.2d 50, 52 (Tenn.App.1975); *City of Bells v. Greater Texoma Util. Auth.,* 790 S.W.2d 6, 13 (Tex.App.1990).

when such a newspaper exists in a community.[43]

3. *A genuine issue of fact exists as to whether the Tundra Drums is a newspaper of general circulation in St. Mary's.*

■ We next address whether there was a newspaper of general circulation in St. Mary's in 1994. The superior court agreed with ACC and SMNC that the *Tundra Drums* was, as a matter of law, a newspaper of general circulation in St. Mary's. The superior court reasoned that the city's failure to place a notice in the *Tundra Drums* resulted in inadequate notice of the public hearing.

■ In *Moore v. State*,[44] we determined that a newspaper is one of "general circulation" in a community when it "contains news of general interest to the community and reaches a diverse readership."[45]

In support of its contention that the *Tundra Drums* satisfies the "general interest" prong of the *Moore* test, ACC and SMNC offered the affidavit of Bonnie Jack, the circulation manager for the *Tundra Drums*. Jack stated that "[t]he *Tundra Drums* contains news on a variety of subjects of general interest including, but not limited to, public notices, news articles regarding events in various village communities including St. Mary's, a calendar of events in various villages, listings of employment opportunities, and various news articles concerning relevant political events."

ACC and SMNC also offered the affidavits of St. Mary's residents Raphael Mike, a member of the SMNC Board of Directors, and Lawrence Mike, the President of SMNC. Both asserted that the paper contains news of general interest to the people of St. Mary's.

■ The evidence offered in support of the second, "diverse readership" prong of the *Moore* test is less clear. Jack's affidavit states that in one week in April 1996, almost two years after the May 3, 1994 hearing on Ordinance 94–4, just over 100 copies of the *Tundra Drums* were sent to St. Mary's for sale. Twenty-one of those copies were returned. In March and July 1994, approximately 100 copies were sent to St. Mary's, with no report of how many were returned.[46]

■ Although ACC and SMNC's evidence generates a genuine issue of material fact as to whether the *Tundra Drums* was a newspaper of general circulation in St. Mary's in 1994, it is not sufficient to support the trial court's conclusion that the newspaper is one of general circulation as a matter of law. The affidavits do not establish that the distribution was widespread at the time of the public hearing, and there was no evidence that anyone in St. Mary's subscribes to the *Tundra Drums*. And a St. Mary's ordinance specifies that the city shall publish notice by posting in public places, which may reflect the council's view that there is not a newspaper of general circulation in St. Mary's. The *Tundra Drums* is delivered only to St. Mary's two stores and the post office.[47] Also, there is no evidence in the record that other bush communities publish their ordinances in the *Tundra Drums*. As noted, AS 29.71.800(18) contemplates that

43. *See* AS 29.71.800(18).

44. 553 P.2d 8 (Alaska 1976).

45. *Id.* at 21.

46. This evidence was not sufficient to satisfy the requirement that the newspaper must "reach[] a diverse readership." *Moore*, 553 P.2d at 21. In *Moore*, copies of the *Anchorage Times* were delivered to peoples' homes. *See id.* But here there was no evidence that a diverse readership actually purchased the *Tundra Drums*; ACC and SMNC only offered affidavits that the papers were delivered to St. Mary's stores and comparatively few were returned. Because the trial court was required to view the evidence in light most favorable to the non-moving party, *see Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985), it should not have presumed that the papers reached a diverse St. Mary's readership.

47. It is ironic that the *Tundra Drums* was only available in St. Mary's at the ACC store, Yukon Traders, and the post office—the very places that St. Mary's claims to have posted its public notices. Accordingly, any person acquiring the *Tundra Drums* in the days before the May 3, 1994 hearing would have had the opportunity to see the notice of the meeting in these public places.

there may be no newspaper of general circulation distributed in particular municipalities. Under such circumstances, the statute calls for posting in three public places. In our view, in cases where it is fairly and reasonably debatable as to whether there is a newspaper of general circulation distributed in a community, the presumption of government regularity requires deference be afforded to that position which upholds the ordinance.[48]

Finally, our case law on publication requirements reflects deference to the government's decision whether a newspaper is one of "general circulation."[49] In *Moore*, we concluded that the Division of Lands satisfied a publication requirement when it decided to publish notice in the *Anchorage Times* for a land sale in the Kachemak Bay area.[50] In that case we relied on evidence that 130 of Homer's 3,500 residents subscribed to the *Anchorage Times* to conclude that it was a paper of general circulation in Homer.[51] But *Moore* should not be interpreted as setting a threshold ratio of the number of papers to the number of residents required to establish that a newspaper is one of general circulation. Instead, *Moore* stands for the principle that courts should defer to a government's judgment regarding whether a newspaper is one of general circulation. In *Moore*, we concluded that the *Anchorage Times* was a newspaper of general circulation despite the fact that a relatively small percentage of Homer residents subscribed to it.[52] Nothing in *Moore* suggests that if the Division of Lands had decided that the circulation of the *Anchorage Times* in Homer was insufficient to make it a newspaper of general circulation, such a determination would not also have been upheld.[53]

In this case, St. Mary's decision not to publish the notice in the *Tundra Drums* does not appear to be an attempt to frustrate public notice. Instead, St. Mary's acted according to its established publication procedures, which require posting at three locations, including the city offices, for at least five days. Here, the police posted copies of the ordinance and the agenda for the May 3 hearing at the city offices, the post office, the school, and two local stores, including ACC.

Because courts should defer to the judgment of local government as to what constitutes a "newspaper of general circulation" in the community, and because a genuine issue of fact exists as to whether the *Tundra Drums* was a newspaper of general circulation in St. Mary's, we conclude that the superior court erred in deciding this issue as a matter of law.

4. *If St. Mary's need not have placed a public notice in the Tundra Drums, public notice was otherwise proper.*

If St. Mary's was not required to publish notice in the *Tundra Drums*, it would have been required by statute to post notices "in three public places for at least five days."[54] The superior court found that St. Mary's failed to produce admissible evidence of actual postings and thus ruled that the notice provided was ineffective and in violation of the statutory posting requirement. We disagree.

Although ACC and SMNC had the burden to overcome the presumption that the proceedings of this municipal government were conducted in accordance with the law,[55] St. Mary's did produce evidence supporting the validity of its notice. City manager Smith stated in an affidavit that he directed police officer James Webb to post the notices. The minutes of the May 3, 1994 meeting also indicate that the notices were posted and reposted after having been torn down at the post office and the ACC store. Given this evidence, and the fact that ACC and SMNC never made a prima facie showing that the

---

48. *See supra* pp. 11–12.

49. *Moore*, 553 P.2d at 21.

50. *Id.*

51. *See id.*

52. *See id.*

53. In *Moore*, we implied that *The Kenai Cheechako News* was also a newspaper of general circulation in the vicinity. *Id.* at 21.

54. AS 29.71.800(18).

55. *See Liberati v. Bristol Bay Borough*, 584 P.2d 1115, 1118 (Alaska 1978).

posting of notice was inadequate, the superior court erred in concluding that St. Mary's failed to post adequate notice as an alternative basis for granting ACC and SMNC summary judgment.

## V. CONCLUSION

Because St. Mary's neither created a new sales tax nor increased the rate of levy of its sales tax, AS 29.45.670 did not require a public vote ratifying Ordinance 94–4. As a result, the superior court erred when it invalidated Ordinance 94–4 on this basis. We also disagree with the superior court's conclusion in the alternative that no genuine issue of material fact existed as to whether St. Mary's provided adequate public notice of the hearing on Ordinance 94–4. A genuine issue of material fact exists as to whether the *Tundra Drums* was a newspaper of general circulation in St. Mary's in 1994. We therefore REVERSE the grant of summary judgment and REMAND for further proceedings consistent with this opinion.