**KIVALINA RELOCATION PLANNING COMMITTEE, Plaintiff,**

v.

**TECK COMINCO ALASKA, INC. Defendant.**

**Nana Regional Corporation, Intervener/Defendant.**

**No. A02–231 CV (JWS).**

United States District Court, D. Alaska.

Jan. 20, 2004.

Luke Cole, Center on Race, Poverty & Environment, San Francisco, CA, for plaintiff.

Sean Halloran, Hartig Rhodes Hoge & Lekisch, PC, Anchorage AK, for defendant Teck Cominco Alaska Inc.

James E. Torgerson, Heller, Ehrman, White & McAuliffe, LLP, Anchorage, AK, for defendant NANA Regional Corp.

## ORDER FROM CHAMBERS

SEDWICK, District Judge.

### I. MOTIONS PRESENTED

At docket 87 defendant Teck Cominco Alaska Incorporated ("Teck") moves for summary judgment. The motion is opposed by plaintiff Kivalina Relocation Planning Committee ("KRPC"). At docket 88 intervener/defendant NANA Regional Corporation ("NANA") also moves for summary judg-

1. See orders at dockets 16, 39 and 85.

2. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

ment. KRPC has opposed NANA's motion. Both motions have been fully briefed. Oral argument has not been requested, and the court has determined that oral argument would not materially assist in the determination of the motions. This order also disposes of KRPC's motion for partial summary judgment at docket 47, Teck's cross-motion for partial summary judgment at docket 92, KRPC's motion to strike certain of Teck's exhibits at docket 111, Teck's motion to stay consideration of certain of KRPC's summary judgment claims at docket 120, and KRPC's motion to strike portions of Teck's reply at docket 143.

### II. BACKGROUND

The court incorporates the background section in several earlier orders for a full description of the parties and the litigation.[1] In the pending motions at dockets 87 and 88, Teck and NANA challenge the capacity and/or standing of KRPC to bring this action. NANA asserts KRPC lacks "organizational standing" because its organizational purpose is strictly limited to acting as an advisory committee to plan the relocation of the village of Kivalina; it does not include the filing of lawsuits. Teck asserts that KRPC has no independent existence, is without capacity to bring this action, lacks associational standing, and is not a real party in interest. Thus, the principal issues framed by the motions at dockets 87 and 88 are whether KRPC has the capacity to sue and whether it has standing to raise the alleged violations of the Clean Water Act. Complete disposition of the motions at dockets 87 and 88 also requires the court to consider the propriety of substituting six individuals as plaintiffs in place of KRPC.

### III. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to material facts and if the moving party is entitled to judgment as a matter of law. The moving party has the burden of showing that there is no genuine dispute as to material fact.[2] The moving party need not present evidence; it need only point out the lack of any genuine dispute as to material fact.[3] Once the moving party has met this

3. Id. at 323–25, 106 S.Ct. 2548.

burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[4] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[5] However, the nonmoving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a factfinder to resolve the parties' differing versions of the truth at trial.[6]

## IV. DISCUSSION

### A. Pleading Requirements

Initially, the court must determine whether the capacity issue has been properly raised. A party wishing to raise the issues of legal existence of a party, capacity to sue, or the authority of a party to sue in a representative capacity must do so by specific negative averments.[7] NANA's Third Affirmative Defense asserts that KRPC is not a "citizen" within the scope of 33 U.S.C. § 1365 and, therefore, cannot bring this action.[8] Teck raised the issue of capacity and/or standing as its Second Affirmative Defense in both its answer[9] and amended answer.[10] Thus, the requirement that lack of capacity be raised by specific negative averments has been satisfied and the issue preserved.

### B. Nature of Kivalina Relocation Planning Committee

Inquiry begins with an examination into the purpose, function, and power of KRPC. Although some facts may be in dispute, the facts material to disposition of the issues presented are undisputed. KRPC was initially formed in or about August 1995 as a result of a joint meeting of the Kivalina City and the Kivalina IRA Councils.[11] On December 1, 1998, the Kivalina City Council ("City"), Kivalina IRA Council ("Village"), and Northwest Arctic Borough Assembly ("Borough") in Joint Resolution 98–48 recognized KRPC was jointly established by the Borough, City, and Village "to facilitate planning and coordination efforts for the Kivalina Relocation Project." [12] Thus, whether as argued by KRPC, KRPC was initially formed by the City and Village without Borough participation is irrelevant today; both the City and Village have officially acknowledged its transformation into a tripartite committee.

KRPC acknowledges that its purpose is to act as a citizens' advisory committee advising the City and Village on matters related to the relocation of the Village of Kivalina.[13] KRPC does not maintain a bank account, does not seek its own funding, and must obtain the approval of the City and Village before spending any money.[14] KRPC is composed of seven individuals appointed by the City and Village.[15] Currently, six individuals serve on the committee as one died and has not been replaced.[16] In June 1999,

4. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

5. *Id.* at 255, 106 S.Ct. 2505.

6. *Id.* at 248–49, 106 S.Ct. 2505.

7. Fed. R. Civ. P. 9(a).

8. Doc. 40.

9. Doc. 7.

10. Doc. 45.

11. Declaration of Betty Swan, ¶ 3, and Exh. 92 attached to KRPC's Opposition to Teck Motion [doc. 100]; Declaration of Colleen Swan, ¶ 2, and Exh. 85 attached to KRPC's Opposition to NANA Motion [doc. 99]. The court notes that although the minutes of the August 3, 1995, joint meeting between the Kivalina City Council and Kivalina IRA Council (Exhibits 85 and 92) reflect an intent to form the Kivalina Relocation Plan-

ning Committee, neither those minutes nor any other document in the record reflects any vote or other official action taken by the City or IRA Council to formally establish KRPC.

12. Exh. A to NANA Motion [doc. 88]. This is the earliest document in the record officially recognizing the existence of KRPC.

13. KRPC's Opposition to NANA Motion, p. 4 [doc. 99]; KRPC's Opposition to Teck Motion, p. 6 [doc. 100]; Deposition of E. Adams, Jr., pp. 3, 7 (Exh. 3 to NANA Motion) [doc. 88].

14. Deposition of E. Adams, Jr., pp. 4, 6 (Exh. 3 to NANA Motion) [doc. 88].

15. Exh. 92 attached to KRPC's Opposition to Teck Motion [doc. 100]; Exh. 85 to KRPC's Opposition to NANA Motion [doc. 99].

16. Declaration of E. Adams, Jr., ¶ 2, attached to KRPC's Opposition to Teck Motion [doc. 100].

a Memorandum of Agreement ("MOA") was reached between the Borough, City of Kivalina, and Village;[17] such agreements are sanctioned by state law.[18] That agreement provided in relevant part that although the parties to the MOA would retain ultimate authority over the process, KRPC would play a central role in the relocation. Specifically, the MOA, restating the language of Joint Resolution 98–48, provided that:

1. The KRPC will be responsible for conceptually forming the relocation master plan and the related comprehensive plan.
2. The KRPC will be involved in all other relocation studies, projects, and related actions.
3. The KRPC will report to the City and IRA.

## C. Capacity

There are two alternative means by which KRPC can establish capacity to sue. It has capacity to bring the instant lawsuit if, under applicable state law, it has an independent existence with the power to sue or be sued.[19] However, even if KRPC lacks capacity to sue under state law, it may nevertheless maintain this action, which involves rights provided by federal law, if it is determined to be an unincorporated association as a matter of federal law.[20]

### 1. Capacity Under State Law

■ As discussed in greater detail in IV. B., below, KRPC is an intergovernmental committee. As such, it may sue and be sued only if the Borough, City, and Village intended to create a separate legal entity.[21]

The facts in this case establish that: the City and Village retain the power to determine who may serve on KRPC; the Borough and City finance the operations of KRPC; the Borough, City, and Village determine the functions or scope of authority, control the continued existence, and bear the ultimate responsibility for the acts or actions of KRPC. This is indicative that they did not intend to create a separate entity.[22] In addition, although Alaska law authorizes municipalities and, in some cases, native villages, to sue and be sued,[23] there is no provision in the Alaska Statutes, nor has the court's attention been invited to any other provision of otherwise applicable law, state or local, that permits intergovernmental committees such as KRPC to sue or be sued. Under controlling Alaska law, the result is a lack of capacity to sue.[24]

### 2. Capacity under Federal Law

■ Federal "courts have generally defined an 'unincorporated association' as 'a voluntary group of persons, without a charter, formed by mutual consent for the purpose of promoting a common objective.' "[25] For the following reasons, the court concludes that KRPC does not fall within the scope of this definition.

Interestingly, KRPC takes the position that, although it is "representative of" the Borough, City, and Village, it represents only the six individuals serving on the committee.[26] KRPC bases its position on the assumption that the six individuals are the "members" of the association.[27] The as-

17. Exh. 77 to KRPC's Opposition to NANA Motion [doc. 99]; Exh. 95 to KRPC's Opposition to Teck Motion [doc. 100].

18. AS § 29.35.010(13).

19. FED.R. CIV. P. 17(b).

20. FED.R. CIV. P. 17(b)(1); *Sierra Association for Environment v. Federal Energy Regulatory Commission,* 744 F.2d 661, 662 (9th Cir.1984).

21. *Hervey v. Estes,* 65 F.3d 784, 792 (9th Cir. 1995); *North Kenai Peninsula Road Maintenance Service Area v. Kenai Peninsula Borough,* 850 P.2d 636, 639 (Alaska 1993).

22. *See Hervey v. Estes, supra.* Although it did not admit that it lacked capacity under Alaska law,

KRPC offered no evidence on nor did it argue the issue, effectively conceding it.

23. AS §§ 09.65.070(a); 29.35.010(14); *State v. Aleut Corp.,* 541 P.2d 730 (Alaska 1975).

24. *See North Kenai Peninsula Road Service Area v. Kenai Peninsula Borough, supra.*

25. *Committee for Idaho's High Desert, Inc. v. Yost,* 92 F.3d 814, 820 (9th Cir.1996).

26. KRPC's Opposition to NANA Motion, n. 19, pp. 6–7 [doc. 99]

27. KRPC's Opposition to Teck Motion, pp. 11—15 [doc. 100].

sumption is incorrect. KRPC was created by, and its continued existence is determined by the Borough, City, and Village, not the individuals serving on the committee. The six individuals are not "members" of KRPC in the traditional sense. The six individuals were appointed to the committee; they did not come together voluntarily and form the committee by their mutual consent. To the extent that KRPC can be said to have members, they are the Borough, City, and Village, not the six individuals.

The "unincorporated association" exception in Rule 17(b)(1) does not extend to governmental units, subdivisions, agencies or committees.[28] The Supreme Court acknowledges, at least implicitly, this rule.[29] In cases of this nature, the court must be guided more by substance than form in determining the constituency of what is asserted to be an unincorporated association.[30] The six individuals in this case do not possess any of the indicia of members of an unincorporated association. They do not: determine who may serve on KRPC, do not finance the operations of KRPC, do not determine the functions or scope of authority of KRPC, do not control the continued existence of KRPC, nor do they bear the ultimate responsibility for the acts or actions of KRPC.[31] All of these powers and attributes are retained by the Borough, City, and/or Village.

KRPC is nothing more than a committee formed by three governmental entities, the Borough, City, and Village,[32] for the purpose of providing advice and counsel in planning and effectuating the relocation of the City of Kivalina. The six individuals appointed to serve on that committee are not members of an unincorporated association within the meaning of Rule 17(b)(1).

### D. Standing

KRPC, serving as a citizen advisory committee to the Borough, City, and Village on the planning of the relocation of Kivalina, cannot establish its standing on that basis alone. Decisions of the United States Supreme Court make clear that an organization's abstract concerns with a subject that could be affected by adjudication do not suffice for the concrete injury required by Article III of the Constitution. Insofar as KRPC asserts standing based upon its special interest in the planning of the relocation project it must fail.[33] KRPC asserts no injury to itself; indeed, in the context of this case, it could not do so, therefore, it can establish standing only as the representative of those of its members who have been injured in fact.[34]

As the Supreme Court has held: [35]

[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

KRPC fails the standing test on two counts.

First, as noted above, the members of KRPC, if there are in fact any members, are the Borough, City, and Village. There is no allegation that any of the these three have suffered any injury as a result of the alleged

---

28. *See, e.g., Dean v. Barber,* 951 F.2d 1210, 1215, n. 4 (11th Cir.1992). *But cf. Hennessey v. National Collegiate Athletic Ass'n,* 564 F.2d 1136 (5th Cir.1977) (treating the NCAA as an unincorporated association even where some of its members were state institutions rather than individuals).

29. *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 344, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).

30. *Ibid.*

31. *See, e.g., Hunt v. Washington State Apple Advertising Commission,* 432 U.S. at 344–45, 97 S.Ct. 2434,.

32. The court is mindful that status as a governmental entity of the IRA Council, a federally-recognized Indian Tribe, is less than crystal clear. Nonetheless, it is the opinion of the court that it is appropriate to accord the IRA Council those attributes for the purposes of this decision.

33. *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 40, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976).

34. *Ibid.*

35. *Hunt v. Washington State Apple Advertising Commission, supra,* 432 U.S. at 343, 97 S.Ct. 2434.

**528**

NPDES violations. Without an injury in fact, there can be no standing.

Second, the bringing of this action is not germane to the purpose of KRPC. It is undisputed that the purpose of KRPC is to advise the Borough, City, and Village on matters related to the relocation of Kivalina. KRPC argues that the "related actions" language in the June 1999 MOA, properly interpreted, extends the purpose of KRPC to initiating lawsuits in general and further, in any event, that at a meeting of the City and IRA Councils in June 2002 KRPC was specifically authorized to bring the instant action. Specifically, KRPC points to the Declarations of Enoch Adams, Jr., Colleen Swan, Joseph Swan, Betty Swan, and Jerry Norton attached to its oppositions to the NANA Motion[36] and the Teck Motion[37] as evidencing that the bringing of the instant action is germane to the purpose of KRPC and/or was authorized by the City and IRA Council.

■■■ The declarations relied upon by KRPC suffer from two fatal deficiencies. First, a lay witness may not testify as to a legal conclusion, such as the legally correct interpretation of a document.[38] Second, conclusory statements unsupported by the record are insufficient to defeat a motion for summary judgment.[39]

KRPC relies on a provision in the June 1999 MOA: "The KRPC will be involved in all other relocation studies, projects, and related actions." The issue is whether the term "and related actions" implicitly includes the initiation of the instant lawsuit. The dictionary definition of the word "action" is certainly broad enough to encompass the meaning ascribed to it by KRPC. However, interpreting the meaning of words that have different meanings depending on the context,

as does the word "action," requires examining the total context in which the word was used.[40] Initially, the court notes that KRPC's responsibility extends only to conceptually forming the relocation master plan and the related comprehensive plan. Second, the sentence relied on by KRPC does nothing more than indicate that KRPC will be *involved in* other relocation studies, and projects and related actions. It does not specify the nature or degree of that involvement. Moreover, the "actions" must be related to the study or project; nowhere in the context of the surrounding language is it even remotely suggested that the word is being used in the context of a legal action.[41] While, as asserted by KRPC, obtaining clean water is unquestionably important to the relocation of the village, given the nature of KRPC's responsibilities, *i.e.*, a citizens' advisory committee with no power beyond rendering advice, it cannot be concluded that the language relied on by KRPC contemplates initiation of lawsuits. Actually initiating a lawsuit in its own name is simply not within the parameters of KRPC's stated and undisputed function—to act as a citizens' advisory committee.

KRPC next contends that it was given specific authorization to commence the instant litigation. KRPC points to a June 27, 2002, joint meeting of the City and IRA Councils in which it is asserted authorization was given. Not only are the conclusory statements made in the declarations unsupported by the record,[42] they are, in fact, contradicted by the record. The transcript of the June 27, 2002, meeting does not reveal that either the City or the Village authorized the filing of this lawsuit.[43] There was no motion made nor a vote taken on the ques-

---

36. Doc. 99.

37. Doc. 100.

38. *Evangelista v. Inlandboatmen's Union of Pacific*, 777 F.2d 1390, 1398 n. 3 (9th Cir.1985); Fed. R. Evid. 701.

39. *Arpin v. Santa Clara Valley Transportation Agency*, 261 F.3d 912, 922 (9th Cir.2001).

40. *See, e.g., United States v. King*, 244 F.3d 736, 740–41 (9th Cir.2001); *Leisnoi, Inc. v. Stratman*, 154 F.3d 1062, 1066 (9th Cir.1998).

41. *See* Exhs. 78 and 79 attached to KRPC's Opposition to NANA Motion [doc. 99].

42. The declarations conclude that filing this action was authorized. However, the declarations are devoid of any factual statements to support that conclusion. There is nothing in the declarations concerning the process followed by the City or Village at the meeting, *e.g.*, the vote on a formal motion or resolution.

43. Exh. 15 to Teck's Reply [doc. 106].

tion. The most that can be said is that there was a tacit acquiescence by those in attendance by reason of no objection being made to the suggestion that KRPC be the party plaintiff. With respect to the City, this is clearly insufficient to reflect official action, which must under state statute be accomplished by a recorded vote.[44]

KRPC lacks the capacity to sue under Rule 17(b), either under Alaska law or the federal law exception embodied in Rule 17(b)(1). Furthermore, KRPC is without standing to bring this action under either the injury in fact or associational standing tests. It follows that there is no proper party plaintiff to this action and, in the absence of a proper plaintiff, the case must be dismissed, unless other plaintiffs may be substituted.

### E. Substitution of Plaintiffs

■ KRPC urges that the six individuals could be substituted as plaintiffs in this lawsuit. It is true that, as a general rule, a case should not be dismissed for lack of a proper plaintiff.[45] Here, there is an impediment to the suggested substitution. Only KRPC was identified in the original 60–day letter required by 33 U.S.C. § 1365(b)(1).[46] It is clear under controlling Ninth Circuit precedent that only the parties who are specifically identified in the 60–day letter may be plaintiffs in a Clean Water Act lawsuit based on that 60–day letter.[47]

■ In July 2003, subsequent to the time this lawsuit was initiated, a second 60–day letter under § 1365(b)(1) was sent to Teck, which included the names of the six individuals in addition to KRPC.[48] KRPC argues that the July 2003 letter supports permitting the six individuals to substitute for KRPC as plaintiff in this action. The Supreme Court mandated strict adherence to a similar 60–day notice requirement in the Resource Conservation and Recovery Act in *Hallstrom v. Tillamook County*.[49] The Ninth Circuit has instructed that the *Hallstrom* decision pro-

vides a guide to the application of the 60–day notice provision in Clean Water Act cases.[50] To permit the substitution of the six individuals as plaintiffs in this lawsuit, which was commenced well before the 60–day period of the July 2003 notice, would disregard the clear language of § 1365(b)(1) and the teaching of both the Ninth Circuit and the Supreme Court with respect to the policies underlying such notice provisions. Under controlling precedent this court lacks discretion to permit the substitution of persons as plaintiffs who were not identified in the 60–day notice upon which this lawsuit is based.

### V. CONCLUSION

For the reasons set forth above, the motions at dockets 87 and 88 are **GRANTED**. Having concluded that the case must be dismissed, the motions at dockets 47, 92, 111, 120, and 143 are **DENIED** as moot.

The Clerk will please enter judgment that this case is dismissed.

44. AS § 29.20.160.

45. *Cf.* Fed.R. Civ.P. 17(a).

46. Exh. A to Complaint [doc. 1].

47. *Washington Trout v. McCain Foods, Inc.*, 45 F.3d 1351, 1354–55 (9th Cir.1995).

48. Exh. 96 to KRPC's Opposition to Teck Motion [doc. 100].

49. 493 U.S. 20, 25–27, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989).

50. *Washington Trout*, 45 F.3d at 1354–55.